SIDNEY H. STUART, Jr., Appellant, *v.* GEORGE W. PALMER, as Collector, etc., et al., Respondents.

A law imposing an assessment for a local improvement without notice to, and a hearing, or an opportunity to be heard, on the part of the owner of the property to be assessed, has the effect to deprive him of his property without "due process of law," and is unconstitutional.

The Legislature may prescribe the kind of notice and the mode in which it may be given, but it cannot dispense with all notice.

It is not enough that the owner may, by chance, have notice, or that he may, as a matter of favor, have a hearing, the law must require notice and give a right to a hearing.

So, also, it is immaterial that the assessment has been in fact fairly apportioned, the constitutional validity of the act is to be tested, not by what has been, but by what may be done under it.

Accordingly *held*, that the provision of the act "to lay out, open and grade Atlantic avenue, in the town of New Lots, Kings county" (§ 4, chap. 217, Laws of 1869 as, amended by chap. 619, Laws of 1870), which provides

for assessing the expenses of regulating and grading the avenue, was unconstitutional; and that an assessment laid thereunder was void.

Also, *held*, that as the invalidity of the assessment would always appear, it could constitute no such cloud on title as to call for the interference of a court of equity to remove it.

The constitutional provision declaring that no person shall be deprived of life, liberty or property, without "due process of law," is not limited to judicial proceedings, but extends to every proceeding which may interfere with those rights, whether judicial, administrative or executive.

The authorities defining the phrase, "due process of law," collated.

(Argued March 28, 1878; decided June 18, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term. (Reported below, 10 Hun, 23.)

This action was brought by plaintiff against defendant Palmer, as collector of taxes of the town of New Lots, to vacate an assessment upon lands of plaintiff as a cloud upon the title, and to restrain the said collector from collecting the same.

The facts appear sufficiently in the opinion.

*James R. Adams*, for appellant. A court of equity has, under the circumstances, jurisdiction to grant the relief asked for. (*Marsh* v. *City of B'klyn*, 59 N. Y., 280; 4 T. & C., 413; *Scott* v. *Underdonk*, 14 N. Y., 9; *Hatch* v. *City of Buffalo*, 38 id., 276; *Shaw* v. *Dwight*, 27 id., 245; *Crooke* v. *Andrews*, 40 id., 551; *Newell* v. *Wheeler*, 48 id., 486; 1 R. S. [5th ed. Bank's], 934, § 99, 935, § 101, 936, § 109.) It was not necessary to maintain this action to show that the property had been sold. (*Marsh* v. *City Brooklyn*, 4 T. & C., 413; 59 N. Y., 280; *Hatch* v. *City Buffalo*, 38 id., 276; *Shaw* v. *Dwight*, 27 id., 245; *Scott* v. *Underdonk*, 14 id., 9; *Crooke* v. *Andrews*, 40 id., 547; Laws of 1870, chap. 619; *N. Y. and H. R. R.* v. *Morrisania*, 7 Hun, 652; *Nichols* v. *Voorhis*, 9 id., 171; *Longley* v. *City Hudson*, 4 T.·& C., 353; *Colman* v. *Shattuck*, 62 N. Y., 348; *McAndrew* v. *Radway*, 34 id.,

511; *Mayor New York* v. *N. S. S. I. F. Co.*, 9 Hun, 620.)
The assessment and lien thereof is void and should be vacated
and set aside because it was made, levied and confirmed with-.
out any notice to plaintiff or other property owners affected
by it.   (Case folios, 45–55, 84–85, 122;  Laws of 1870, chap.
619, § 3;  *Overing* v. *Foote*, 65 N. Y., 263;  *Clark* v. *Norton*,
49 id., 243;  *Wheeler* v. *Mills*, 40 Barb., 644;  *Matter of Ford*,
6 Lans., 92;  *Ireland* v. *City Rochester*, 51 Barb., 414;
*Owners of ground* v. *Mayor of Albany*, 15 Wend., 375;
*Jordan* v. *Hyatt*, 3 Barb., 275;  *In re Com'rs Central Park*,
51 Barb., 277;  *Sharp* v. *Johnson*, 4 Hill, 92;  *Cruger* v.
*Dougherty*, 43 N. Y., 119, 122;  *People ex rel.* v. *Hurlburt*,
46 id., 110;  *In re Flatbush Ave.*, 1 Barb., 286;  *Hopkins*
v. *Mason*, 42 How., 115;  *Jackson* v. *Healey*, 20 Johns., 495;
*Fonda* v. *Canal Appraisers*, 1 Wend., 288;  *Rockwell* v.
*Nearing*, 35 N. Y., 302;  *Doubleday* v. *Newton*, 9 How., 71;
*Sharp* v. *Spier*, 4 Hill, 76;  *Fitch* v. *Com'rs of Highways*,
22 Wend., 132;  *Bennett* v. *City Buffalo*, 17 N. Y., 283;  R.
S., Banks Bros. [5 ed.], vol. 1, p. 951, § 2 and p. 911, § 17,
18, etc.;  *Kinderbock* v. *Claw*, 15 Johns., 537;  *Taylor* v.
*Porter*, 4 Hill, 140;  *Hopkins* v. *Mason*, 42 How., 115;  *N.
Y. and Oswego M. R. R.* v. *Van Horn*, 57 N. Y., 473.)

EARL, J.   In 1869, an act was passed by the Legislature
entitled " an act to lay out, open and grade Atlantic avenue
in the town of New Lots, Kings county."   It provided that
the Supreme Court should appoint three freeholders of that
town commissioners for the purposes of the act ; that they
should proceed to lay out the avenue as directed in the act ;
that if the owners did not convey the requisite land to the
town they should take the same and estimate the value thereof,
and award damages for taking the same ;  and that they should
assess the amount of the award upon the lands benefited by
the opening of the avenue, in proportion to benefits.   The
act made ample provision for notice to and hearing of all the
persons interested before the making and final confirmation
by the Supreme Court of the award and assessment.   Section

4 of the act, as amended by chapter 619 of the Laws of 1870, provided that upon the confirmation of the report in relation to the opening of the avenue, or on the conveyance of the land taken for the avenue to the town, the commissioners should be authorized to enter upon the lands and cause the same to be regulated, graded and otherwise improved, and to assess the expense of such regulating, grading, etc., upon the lands which in their judgment should be benefited by such improvement in proportion to the benefits; and that they should certify such assessment, with the names of the parties assessed, to the supervisor of the town, and that the amounts so assessed should, together with interest from the time of making the assessment until the expiration of the warrant of the collector, be added by the supervisors of Kings county to and be made a part of the annual taxes for the ensuing year upon the lands upon which they should be assessed, and should be a lien thereupon, and levied and collected in the same manner as other taxes are required by law to be collected.

It will be observed that two assessments are provided for by the acts; one for the damages awarded to the owners of the land, under section 3 of the act of 1869, as amended, and another for the expense of regulating, grading, etc., under section 4, as amended. The former assessment was to be made and confirmed after proper notice to and hearing of the persons interested. The latter assessment could be made without any notice to or hearing of any person. The law requires no notice, and a provision for notice cannot be implied. Upon the assumption that the law was valid, there was ample authority for the commissioners to make the assessment without any notice or hearing; and the assessment, when once made in the exercise of the arbitrary discretion thus conferred, would be unassailable, and however unjust, unfair and oppressive, would be subject to no review, unless fraud or corruption could be shown.

Under these acts commissioners were appointed; and they proceeded to open and improve the avenue at a large expense; and in 1871, in pursuance of section 4, they made an assess-

ment for such expense upon the lands, which, in their judg-
ment, were benefited by the improvement, and certified the
assessment to the supervisor of the town, and the supervisors
of the county added the amount thereof to the annual taxes of
the town and issued a warrant for the collection thereof to the
collector of the town. The amount assessed against land of
the plaintiff was upward of $1,100, and that sum by the
terms of the act became a lien upon his land. The plaintiff
then brought this action to remove such lien, as a cloud upon
the title to his land.

Upon the trial the plaintiff claimed that the assessment
was illegal and void, upon two grounds : (1.) That it was for
more than the expense of the improvement, and (2.) That it
was made without any notice to or hearing of him or other
property owners. He offered to give evidence of the first
ground which, upon the objection of the defendants, was
excluded by the court ; and this exclusion was urged upon
the argument before us as one ground of error. It was fully
admitted upon the trial that there had been no notice or hear-
ing as to the assessment ; and it was claimed by the defend-
ants that the property owners were entitled to no notice or
hearing under the law.

The court, at Special Term, found, as matter of fact, that
no notice of any kind concerning the assessment was ever
made, issued, published or given to the plaintiff or other
property-holders affected by the assessment, and that the
plaintiff was never afforded an opportunity by notice to
object to or complain of the assessment, or to have it reviewed,
or to apply for a review thereof, or to examine the same ;
and it decided, as a conclusion of law, that the plaintiff and
other property-owners were not, under the law, entitled to
notice of the assessment or an opportunity to be heard in
reference thereto, and that the assessment was therefore reg-
ular and legal. The General Term took the same view of
the law and affirmed the judgment of the Special Term.

We shall examine and consider but one question, which
we deem decisive of this case, and that is whether the act

authorizing the assessment was constitutional. If it was unconstitutional, no valid assessment could be made under it ; and the invalidity of the assessment would always appear, and it could constitute no such cloud upon title as to call for the interference of a court of equity. (*Newell* v. *Wheeler*, 48 N. Y., 486; *Marsh* v. *City of Brooklyn*, 59 id., 280.)

Here was an expense for a local improvement of more than $100,000. The commissioners were to ascertain what land within the district of assessment was benefited, and then to apportion and assess the said sum upon such land, in proportion to benefits. The assessment when made was declared to be a lien upon the land, and its payment could be enforced by a sale thereof.

I am of opinion that the Constitution sanctions no law imposing such an assessment, without a notice to, and a hearing or an opportunity of a hearing by the owners of the property to be assessed. It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard. It matters not, upon the question of the constitutionality of such a law, that the assessment has, in fact, been fairly apportioned. The constitutional validity of law is to be tested, not by what has been done under it, but by what may, by its authority, be done. The Legislature may prescribe the kind of notice and the mode in which it shall be given, but it cannot dispense with all notice.

It is not disputed that the Legislature has unlimited power (except as restrained by the Federal Constitution) to impose taxes and assessments for public purposes. It may impose taxes upon all property within the State ; and in such cases the owners are supposed to receive a compensation for the burdens thus imposed in the protection and benefits of the government under which they live. It may impose taxes upon local divisions of the State for the purposes of local government, and all the citizens residing in the locality must

bear the burdens, as they all receive the benefits of the local government. It may cause or authorize local improvements to be made and authorize the expense thereof to be assessed upon the land benefited thereby. But in all cases there must be apportionment of the burdens, either among all the property-owners of the State, or of the local division of the State, or the property-owners specially benefited by the improvements. In either case, if one is required to pay more than his share, he receives no corresponding benefit for the excess, and that may properly be styled extortion or confiscation. A tax or assessment upon property arbitrarily imposed, without reference to some system of just apportionment, could not be upheld.

Assessments for local improvements can be justified only upon the theory that the lands upon which they are laid are specially benefited by the improvements for which they are laid and hence ought to bear the burden rather than property generally ; and if a law should authorize such assessments to be laid, without reference to benefits, it would either take property for the public good, without compensation, or it would take property from one person for the direct benefit of another ; and in either aspect it would be unconstitutional. (*Kirby* v. *Shaw*, 19 Penn., 258; *Schenley* v. *Commonwealth*, 36 id., 29; *McGonigle* v. *Alleghany City*, 44 id., 118; *In the Matter of Washington Avenue*, 69 id., 360; *Patterson* v. *Society*, etc., 24 N. J., 385; *Tide-water Co.* v. *Coster*, 18 N. J. Eq., 519; *In the Matter of the Drainage of Lands*, 35 N. J., 497; *St. John* v. *East St. Louis*, 50 Ill., 92; *Lee* v. *Ruggles*, 62 id., 427; *In the Matter of Albany Street*, 11 Wend., 149; *Litchfield* v. *Vernon*, 41 N. Y., 123.)

What one pays for taxes and assessments is taken for the public good and can be justified upon no other theory. Private property cannot be taken for private purposes, even under the legislative power of taxation. (*Weismer* v. *Village of Douglass*, 64 N. Y., 91.) Taxation and assessment imply apportionment. Each person must share the burdens of taxation and assessment equally with all others in like

situation.    Property may also be taken by the right of emi-
nent domain where the public good requires.    In such case
what one parts with is just so much more than his share of
contribution to the public good, and hence for such property
he must receive compensation in money or its equivalent.
(*People* v. *Mayor of Brooklyn*, 4 N. Y., 419; *Baltimore* v.
*Harris*, 26 Md., 194.)

It must be conceded that property cannot be taken by the
right of eminent domain, without some notice to the owner,
or some opportunity on the part of the owner, at some stage
of the proceeding, to be heard, as to the compensation to be
awarded him.    An act of the Legislature, arbitrarily taking
property for the public good, and fixing the compensation
to be paid could not be upheld.    There would in such case
be the absence of that " due process of law " which both
the Federal and State Constitutions guarantee to every citi-
zen.    Can it be, that when the public takes land for a public
highway, the owners thereof are entitled to a hearing as to
the compensation which they are to receive, and yet that the
lands on both sides of the highway may be assessed to pay
such compensation to their entire value, without any oppor-
tunity on the part of the owners to be heard ?

The Legislature can no more arbitrarily impose an assess-
ment for which property may be taken and sold, than it can
render a judgment against a person without a hearing.    It is
a rule founded on the first principles of natural justice older
than written constitutions, that a citizen shall not be deprived
of his life, liberty or property without an opportunity to be
heard in defense of his rights, and the constitutional provi-
sion that no person shall be deprived of these " without due
process of law " has its foundation in this rule.    This provi-
sion is the most important guaranty of personal rights to be
found in the Federal or State Constitution.    It is a limita-
tion upon arbitrary power, and is a guaranty against arbi-
trary legislation.    No citizen shall arbitrarily be deprived of
his life, liberty, or property.    This the Legislature cannot
do nor authorize to be done.    " Due process of law," is not

confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. (*Weimer* v. *Brueinbury*, 30 Mich., 201.) This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights. .

It is difficult to define with precision the exact meaning and scope of the phrase, " due process of law." Any definition which could be given, would probably fail to comprehend all the cases to which it would apply. It is probably wiser, as recently stated by Mr. Justice MILLER of the United States Supreme Court, to leave the meaning to be evolved " by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded." (*Davidson* v. *Board of Administrators of New Orleans*, 17 Albany Law Journal, 223.) It may however be stated generally that due process of law requires an orderly proceeding adapted to the nature of the case in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing or an opportunity to be heard, is absolutely essential. We cannot conceive of due process of law without this. In his argument in the *Dartmouth College Case* (4 Wheat., 519), Webster defined " due process of law " as a proceeding " which proceeds upon inquiry and renders judgment only after trial."· Mr. Justice EDWARDS in *Westervelt* v. *Gregg* (12 N. Y., 209) defines it as follows : " Due process of law undoubtedly means in due course of legal proceedings according to those rules and forms which have been established for the protection of private rights." Judge COOLEY in his work on Constitutional Limitations, at page 355, after saying that " due process of law " is not confined to ordinary judicial proceedings but extends to all cases where property is sought to be taken or interfered with, says, that " due process of law in each particular case means such an exertion of the powers of govern-

ment, as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as these maxims prescribe for the class of cases to which the one in question belongs." It has always been the general rule in this country, in every system of assessment and taxation, to give the person to be assessed an opportunity to be heard at some stage of the proceeding. That "due process of law" requires this, has been quite uniformly recognized.

In *Butler* v. *Sup'rs of Saginaw* (26 Mich., 22), where a tax had been imposed for building drains, Judge COOLEY says : " It is not the province of any mere legislative direction to impose pecuniary burdens upon the people. The power to tax is indeed plenary ; but taxation implies public interest and in cases like these now in question it also implies proceedings *in pais* in some of which the taxpayers have a right to take part and be heard. Any attempt to lay the burden in disregard of these principles must necessarily be inoperative." In *Patten* v. *Green* (13 Cal., 325), BALDWIN, J., says: " We think it would be a dangerous precedent to hold that an absolute power resides in the supervisors to tax land as they may choose without giving any notice to the owner. It is a power liable to great abuse. The general principles of law applicable to such tribunals oppose the exercise of any such power." In *Philadelphia* v. *Miller* (49 Penn., 440), AGNEW, J., speaking of taxation, says : " Notice or at least the means knowledge is an essential element of every just proceeding of which affects rights of persons or property." In *Matter of Trustees of N. Y. Prot. Epis. Public School* (31 N. Y., 574), Judge DENIO says: " It is manifestly proper that the taxpayers should have notice of the imposition proposed to be laid upon them, and an opportunity for making suggestions and explanations to the proper administrative board or office." In *Ireland* v. *City of Rochester* (51 Barb., 414), Judge JAMES C. SMITH, speaking of the imposition of assessments, says: " It is in the nature of a judicial proceeding against them, and its effect is to take their property for public use. * * * It is a plain principle of justice applicable to all

judicial proceedings, that no person should be condemned, or shall suffer judgment against him without an opportunity to be heard; " and he says that an act assessing " persons without notice transcends the power of the Legislature, and is itself void." *In the Matter of Ford* (6 Lans., 92), Judge GILBERT says : That the duties of assessors in making assessments are of a judicial nature and that " it is a fundamental rule that in all judicial or *quasi* judicial proceedings, whereby the citizen may be deprived of his property he shall have notice, and an opportunity of a hearing before the proceedings can become effectual." That assessors act judicially. See, also, *Barhyte* v. *Shepherd* (35 N. Y., 238), and *Clark* v. *Norton* (49 N. Y., 243).

In *Overing* v. *Foote* (65 N. Y., 263), Mr. Commissioner REYNOLDS says : " The general theory under our laws for taxation of property is that the citizen to be affected must have some sort of notice of the proceeding to be had against his property and that in some form he may be heard, if wrong is apprehended, before any portion of his estate is seized for the support of government ; and I think all our laws for the assessment of property for the purpose of taxation are founded upon this notion of justice." In *Davidson's Case* in the Supreme Court of the United States above referred to, the doctrine that the citizen is entitled to due process of law in the imposition of assessments, is distinctly recognized. In that case, an assessment upon the real estate of the plaintiff in error in the city of New Orleans for draining the swamps of that city was resisted in the State courts and was brought by a writ of error to the United States Supreme Court on the ground that the proceeding deprived the owner of his property without due process of law, and the court refused to interfere with the assessment on the ground that the party assessed had notice and an opportunity to appear before a proper tribunal and contest. Mr. Justice BRADLEY writing one of the opinions says : " In judging what is ' due process of law ' respect must be had to the cause and object of the taking, whether under

the taxing power, the power of eminent domain, or the power of assessments for local improvements, or none of these ; and if found to be suitable or admissible in a special case it will be adjudged to be ' due process of law ; ' but if found to be arbitrary, oppressive and unjust, it may be declared to be not due process of law." In *Murray's Lessee* v. *Hoboken Land and Improvement Co.* (18 How. [U. S.], 272), it was held that the provision as to "due process of law" was a restraint on the legislative as well as the executive and judicial powers of the government. Judge COOLEY in his valuable work on Taxation, at p. 265, says : " In such proceedings therefore it must be a matter of the utmost importance to the person assessed, that he should have some opportunity to be heard, before the charge is fully established against him ; and it would seem to be a dictate of strict justice that the law should make reasonable provisions to secure him as far as may be against partiality, malice or oppression ; " and on p. 266 he says : " We should say that notice of proceedings in such cases, and an opportunity for a hearing of some description, were matters of constitutional right. It has been customary to provide for them as a part of what is due process of law for these cases, and it is not to be assumed that constitutional provisions carefully framed for the protection of property, were intended, or could be construed to sanction legislation under which officers might secretly assess one for any amount in their discretion, without giving him an opportunity to contest the justice of the assessment."

While it may be said that there is no authority directly in point, yet as has been shown there is much judicial expression in favor of the proposition I am endeavoring to maintain. The cases must have been extremely rare in this country where assessments have been imposed without notice or an opportunity to be heard, and hence the application of " due process of law " to the subject of assessments and taxation has not been much discussed. The case nearest in point is *Davidson's Case*. That as has been seen was

a case of assessment, and the United States Supreme Court had jurisdiction of it only because it involved the constitutional provision as to "due process of law." If the citizen in the case of assessments is not entitled to the protection of this constitional provision then the court would have dismissed that case on that ground, but it considered the case upon the merits and decided that there was due process of law.

No case it is believed can be found in which it was decided that this constitutional guaranty did not extend to cases of assessments, and yet we may infer from certain dicta of judges that their attention was not called to it, or that they lost sight of it in the cases which they were considering. It has sometimes been intimated that a citizen is not deprived of his property within the meaning of this constitutional provision by the imposition of an assessment. It might as well be said that he is not deprived of his property by a judgment entered against him. A judgment does not take property until it is enforced, and then it takes the real or personal property of the debtor. So an assessment may generally be enforced not only against the real estate upon which it is a lien; but as in this case against the personal property of the owner also, and by it he may just as much be deprived of his property, and in the same sense as the judgment-debtor is deprived of his by the judgment.

We are therefore of opinion, for the reasons stated, that the acts under consideration were unconstitutional and void, and hence that no assessment laid under them could be a cloud upon title to land, and that the judgment should therefore be affirmed with costs.

All concur; CHURCH, Ch. J., FOLGER and MILLER, JJ., concurring in result.

Judgment affirmed.