Ulman *vs.* Mayor, &c. of Baltimore, *et al.*

(Decided 1st July, 1890.)

CLEMENTINE ULMAN, by her husband and next friend, ALFRED J. ULMAN *vs.* MAYOR AND CITY COUNCIL OF BALTIMORE, and LEWIS N. HOPKINS, City Collector.

*Municipal corporation—Constitutional law—Due process of Law—Taxation for Street improvements.*

The Act of 1874, ch. 218, authorizes the Mayor and City Council of Baltimore to provide by ordinance for the grading, paving. and curbing of any street in the City of Baltimore, and for assessing the cost of any such work, in whole or in part, *pro rata*, upon the property binding on such street, and for collecting such assessment as other city taxes are collected. By ordinance No. 100 of 1886, the City Commissioner was directed to have North Avenue, between Pennsylvania Avenue and the western limits of the City, graded, paved, and curbed, in pursuance of the foregoing Act of 1874, ch. 218, and according to the provisions of Article 47 of the Baltimore City Code, so far as the same may be applicable, the expenses thereof to be assessed, as provided in section 34 of said Article 47, upon the owners of property bounding on said avenue in proportion to the number of front feet

owned by them, respectively. Section 34 of said Article 47, provides that the City Commissioner shall impose a tax upon the owner or owners of property bounding on such street, lane or alley, or part thereof, to pay for.the whole expense of the work, and for collecting the same, in proportion to the number of front feet, owned by them, respectively, and that such tax shall be a lien on the property. Neither the Act of 1874, ch. 218, nor Ordinance No. 100 of 1886, nor section 34 of Article 47 of the City Code, makes any provision for giving notice to the parties who may be charged with the cost of paving North Avenue, that the work will be done, or that they will be assessed therefor. HELD:

That an assessment levied under the Ordinance was null and void, as it was the taking of property without due process of law, in violation of both the Federal and the State Constitution.

The right to have notice to appear and be heard before such tax is imposed, is an absolute right, not to be invaded under any pretext whatever, and the fact that the tax would have been the same if the property owner had appeared and been heard, does not make it legal.

APPEAL from the Circuit Court of Baltimore City.

The decree from which this appeal was taken was passed by Judge DENNIS. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*M. R. Walter,* for the appellant.

*Albert Ritchie,* for the appellees.

McSHERRY, J., delivered the opinion of the Court.

The identical question arising on the record now before us has been passed on by this Court on several occasions, but is now presented distinctively as a Federal question. When the validity of ordinance No. 98

of 1876, passed by the Mayor and City Council of Baltimore, under the Act of 1874, ch. 218, was assailed in *Mayor and City Council of Baltimore vs. Scharf, et al.,* 54 *Md.,* 499, a majority of the Judges who heard that case declared the ordinance void because, among other reasons, it failed to provide for notice to, and a hearing of, the owners of the property binding on the street directed to be repaved. This municipal legislation was held to be repugnant to the organic law because, in effect, it took the property of the individual without due process of law—without giving him an opportunity to be heard either before or after the imposition of the tax. A motion for a reargument was made and granted, and three of the five Judges who heard the argument reversed the former ruling and held the ordinance to be free from constitutional objections. 56 *Md.,* 50. The same result was reached by the same bare majority in *Mayor and City Council of Baltimore vs. Johns Hopkins Hospital,* 56 *Md.,* 1. This ruling has been followed in *Moale, et al. vs. Mayor and City Council of Baltimore,* 61 *Md.,* 224; *Alberger, et al. vs. Mayor and City Council of Baltimore, et al.,* 64 *Md.,* 1.

Ordinance No. 100 of 1886, passed under the Act of 1874, ch. 218, is now assailed upon the ground that it not only violates the Declaration of Rights of Maryland, but likewise the fifth and fourteenth amendments to the Federal Constitution.

By the Act of 1874, ch. 218, the Mayor and City Council of Baltimore were authorized to provide by ordinance for the grading, paving, and kerbing of any street in the City of Baltimore, and for assessing the cost of any such work, in whole or in part, *pro rata,* upon the property binding on such street, and for collecting such assessment as other city taxes are collected. By ordinance No. 100 of 1886 the City Commissioner was directed to have North avenue, between Pennsylvania avenue and the western limits of the

city, graded, paved and kerbed in pursuance of the Act of 1874, ch. 218, and according to the provisions of Article 47 of the Baltimore City Code, so far as the same may be applicable, the expenses thereof to be assessed, as provided in section 34 of said Article 47, upon the owners of property binding on said avenue in proportion to the number of front feet owned by them, respectively. Section 34 is in these words, viz., "After the contract has been awarded as provided in section 32, the City Commissioner shall impose a tax upon the owner or owners of property binding on such street, lane, or alley, or part thereof, equal in amount to the whole expense of the work, and for collecting the same, being three per centum of the whole cost, except for cross streets; and he shall assess and lay the tax upon the owner or owners of property on each side of said street, lane, or alley, or part thereof, of one-half of so much of said street, lane, or alley, as may be in front of such property, except for paving the portion reserved for sidewalks, being one-fifth of the whole width on each side thereof; and the said tax shall be a lien upon such property." After the work was completed under ordinance No. 100 demand was made upon the appellant for the sum of $4639.27, assessed upon her by the City Commissioner for her proportion of the cost of the improvement. She thereupon applied to the Circuit Court for an injunction to restrain the collection of the tax. The Court below refused an injunction, and dismissed the bill. From that decree this appeal has been taken.

Now, it will be observed that neither the Act of 1874, ch. 218, nor ordinance No. 100 of 1886, nor section 34 of Article 47 of the City Code, makes the slightest provision for giving notice to the parties, who may be charged with the cost of paving North avenue, that the work will be done, or that they will

be assessed therefor.  No notice was given them that the ordinance would be passed; no notice was given them that it had been passed, and no notice was given them that they had been adjudged to pay the whole cost of the improvement; and no opportunity was given them to contest any one of these steps in the proceeding.  The entire proceeding, beginning with the Act of Assembly, followed by the ordinance, and the imposition of a lien upon the property binding on North avenue, and upon all other property owned by abutting proprietors, was, in the strictest sense of the term, purely *ex parte*.  No opportunity whatever was given to resist this exaction, either by allowing a hearing before the imposition of the tax, or by providing for an appeal to a Court of law afterwards.  The first process served upon the citizen was a peremptory demand for the payment of a burdensome lien—a judgment *in rem* and *in personam*—imposed by a municipal corporation without summons or notice or warning, and without even an opportunity to appeal.  If this be "due process of law," the provisions of the Federal and State Constitutions, and of Magna Charta itself, are utterly meaningless and vain.

The Act of 1874 does not itself impose the tax for grading, paving, and kerbing North avenue.  It does not fix the amount of that tax, nor the proportion thereof to be paid by the abutting owners, nor the standard by which that proportion is to be ascertained.  No legislative rule was prescribed which should govern the apportionment of any assessment.  It is true that from 1782 to 1860, by various Acts of Assembly, and in 1860 by sections 845 and 847 of Article 4 of the Code of Public Local Laws, the front foot-rule was established by the Legislature; but by the repeal of those sections by the Act of 1874, ch. 218, this rule was abrogated—so far as it had been established by legislative

enactment, and so far only—and no other rule or system of valuation was substituted therefor. The entire cost of the work, the distribution of that cost between the city and the adjoining proprietors, and the establishment of a system—whether by the front foot-rule or by reference to the intrinsic value of each parcel of land binding on the street, or by some other standard—whereby the proportion of each person liable to contribute may be fixed, are not prescribed by the Act of Assembly, but are left, under it, to the discretion of the Mayor and City Council of Baltimore. Can that discretion be lawfully exercised by the municipality without notice to the individuals whose property rights are directly involved? In other words, are those rights, under these conditions, protected by the provisions of the Federal and State Constitutions, which, in substance, declare that no man shall be deprived of his life, liberty, or property without due process of law?

Due process of law is not confined to judicial proceedings. The Article of the Constitution is a restraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave the Legislature free to make any process due process of law by its mere will and pleasure. *Murray's Lessee, et al. vs. Hoboken Land and Imp. Co.*, 18 *How.*, 272. There would seem to be no doubt that notice, in all such cases as the present, is required to constitute due process of law, and is essential to the validity of the assessment. *Walston vs. Nevin*, 128 *U. S.*, 578; *Palmer vs. McMahon*, 133 *U. S.*, 660; *Spencer vs. Merchant*, 125 *U. S.*, 345 ; *Hagar vs. Reclamation District, No.* 108, 111 *U. S.*, 701; *Davidson vs. New Orleans*, 96 *U. S.*, 97 ; *McMillen vs. Anderson*, 95 *U. S.*, 37; *Stuart vs. Palmer*, 74 *N. Y.*, 183 ; *Overing vs. Foote*, 65 *N. Y.*, 263; *City of Philadelphia vs. Miller*,

Ulman *vs.* Mayor, &c. of Baltimore, *et al.*

49 *Pa.*, 440 ; *Butler vs. Supervisors of Saginaw Co.*, 26 *Mich.*, 22 ; *Thomas vs. Gain*, 35 *Mich.*, 155 ; *Patten vs. Green*, 13 *Cal.*, 325; *Darling vs. Gunn*, 50 *Ill.*, 424; *State, &c. vs. Drake*, 33 *N. J.*, 194; *Cooley on Taxation*, 265.

In *Stuart vs. Palmer, supra*, EARL, Judge, speaking for the Court, said : "The Legislature can no more arbitrarily impose an assessment for which property may be taken and sold than it can render a judgment against a person without a hearing. It is a rule founded on the first principles of natural justice, older than written constitutions, that a citizen shall not be deprived of his life, liberty or property without an opportunity to be heard in defence of his rights; and the constitutional provision that no person shall be deprived of these 'without due process of law' has its foundation in this rule. This provision is the most important guaranty of personal rights to be found in the Federal or State Constitution. It is a limitation upon an arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall arbitrarily be deprived of his life, liberty or property. This the Legislature cannot do, nor authorize to be done. 'Due process of law' is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty or property, whether the proceeding be judicial, administrative or executive in its nature. *Weimer vs. Bunbury*, 30 *Mich.*, 201. This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights." In *Spencer vs. Merchant, supra*, it was held by the Supreme Court that " if the Legislature provides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question, what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law." The converse of this must

necessarily be true, and where no such provision is made, there would be a taking of his property without due process of law. And again, .in the same case, the Court says: "The statute of 1881 afforded to the owners notice and hearing upon the question of the equitable apportionment among them, and thus enabled them to contest the constitutionality of the statute, and that was all the notice and hearing to which they were entitled." The New York Act of Assembly, which was before the Supreme Court, was upheld because it expressly provided for notice to the property holders whereby they could appear and contest the apportionment. Had that feature been omitted, logically the decision must have been the other way.

As we have seen, section 34 of Article 47 of the City Code, is a general ordinance which provides, in all cases of grading and paving streets, that the whole cost shall be borne by the abutting owners in proportion to the number of front feet owned by them, respectively. Nothing could be more arbitrary than this. The cost is apportioned in advance without any reference whatever to the value of the property; but solely with regard to the number of front feet; by which rule the heaviest amount may fall on the least valuable property and the lightest on the most valuable. Under ordinance No. 100 of 1886, no opportunity was given the owners along North avenue to show that the apportionment was wrong; that the rule by which the amount was fixed by the city, not by the Legislature, was unjust; or that the calculations of the City Commissioner were erroneous. The property holders are condemned to pay what is exacted of them, without having been afforded an opportunity to be heard in their own defence at all. Why should the citizen not be allowed to contest the fairness and equality of the front foot rule, or any other rule

adopted by the city, when one of the very conditions upon which, as we have seen, the constitutionality of the measure depends, is, that the owner shall have the right to be heard "upon the question what proportion of the tax shall be assessed upon his land?" The right to direct the imposition of such special tax upon such property rests upon the theory of the special benefits accruing to the particular property from the proposed improvement, *Mayor and City Council of Balto. vs. Greenmount Cemetery,* 7 *Md.,* 536; and yet the owner is denied the right to be heard upon this very subject, though the Legislature has not itself undertaken to make the assessment, or even to prescribe the rule by which it shall be made. Some cases have held that, where the apportionment has been made by the Legislature, it is final; but, without pausing to discuss this proposition, it is only necessary to say that these cases are not applicable here, for the very obvious reason that the Act of 1874 has made no such apportionment.

The necessary result of the case of *Spencer vs. Merchant, supra,* is that we must return to the doctrine laid down in *Scharf's Case,* 54 *Md.,* 499, and recede from the opinion overruling that case, and asserting the opposite view.

But it has been suggested that the order appealed from should be affirmed because even had an opportunity been given to the appellant to appear and be heard before the tax was imposed, no different result could have been reached. To this we cannot agree. The constitutional guaranty belongs to the individual by right, and not by the mere favor of the Legislature or the sufferance of judicial tribunals. It is the duty of the Courts to see that this right is not invaded under any pretext whatever, when the subject is before them. Its value as a safeguard would speedily dwindle away, or, at least, become exceedingly precarious, if the

Ulman *vs.* Mayor, &c. of Baltimore, *et al.*

privilege to assert it were made to depend upon the belief or the opinion of a Judge that it would, if asserted, be available. It is a right of which the citizen cannot be deprived, and he may appeal to it, whatever others may think as to the result of such an appeal. "It matters not, upon the question of the constitutionality of such a law, that the assessment has in fact been fairly apportioned. The constitutional validity of law is to be tested, not by what has been done under it, but by what may by its authority be done." *Stuart vs. Palmer, supra.* But we do not admit that, had notice been given the appellant, it would have been fruitless. It might well be that she could have shown that she had been improperly assessed, and that the rule of front foot measurement, instead of an actual valuation, was as unjust and arbitrary as though adopted and applied for purposes of general taxation. That such a mode of valuation would be tolerated for the latter purposes, no one will seriously contend.

In further support of the conclusion which we have reached, we refer to the opinion delivered by Judge IRVING in *Scharf's Case,* and to the dissenting opinion filed by Chief Judge ALVEY in the *Johns Hopkins Hospital Case.*

It follows from our understanding of the case of *Spencer vs. Merchant* that the decree of the Circuit Court must be reversed, and the cause remanded that an injunction may issue, because the assessment levied upon the appellant's property is null and void; and it is null and void because the ordinance made no provision for notice to and hearing of any proprietor whose land adjoined North avenue, upon the question what proportion of the tax should be assessed upon his land.

*Decree reversed, and
cause remanded.*

(Decided 1st July, 1890.)

Ulman *vs.* Mayor, &c, of Baltimore, *et al.*

A motion was filed on the 28th of August, 1890, by the appellees, for a reargument of the foregoing case, and it was urged in that behalf that the decision was not supported by the cases in the Supreme Court, and that the case of *Spencer vs. Merchant,* 125 *U. S.,* 345, did not require this Court to overrule the Maryland cases.    The motion for a rehearing was overruled.

The motion for a reargument having been denied, Judge Robinson filed the following dissenting opinion, in which Judge Bryan concurred:

The question now before us, is one of more than ordinary importance, and I cannot but regret the conclusion which has been reached by the majority of the Court.    I say regret, because if we are to be governed by the repeated decisions of this Court on the subject, if the safe and time honored maxim, *"stare decisis,"* is to be recognized at all, then the question is no longer an open question. But these decisions, although made upon the fullest argument, and fullest consideration, are now, in the opinion of the majority of the Court, all wrong, not only wrong in principle, but in conflict, it is said, with the late case of *Spencer vs. Merchant,* 125 *U. S.,* 345.    As I do not concur in this opinion, I propose to state briefly, the grounds of my dissent.    The ordinance under which this question arises, directs that a portion of North avenue shall be graded and paved; and it directs that the City Commissioner shall assess the expense thereof upon the owners of abutting property, in proportion to the number of front-feet of their respective properties—in other words, by what is known as *"the front foot rule."*

The appellant is owner of a lot fronting on said avenue, and the amount assessed to her by the front foot rule is admitted to be her *pro rata* share of the expense.    So there is no error in this respect.    But the ordinance under which the assessment was made, is, it

is said, unconstitutional and therefore void, because it does not provide for notice and hearing on the part of the lot-owners, before the assessment was levied. An assessment thus made, without notice, it is argued, is a taking of *"property without due process of law,"* and in violation of the Fourteenth Amendment of the Constitution of the United States, which declares that "No State shall deprive any person of life, liberty or property without due process of law." This objection was made to a like ordinance in the case of *Mayor, etc., of Baltimore vs. Johns Hopkins Hospital,* 56 *Md.,* 1, —a case so well argued by eminent counsel; but the Court, after full consideration, decided that the objection was not a valid objection, that an assessment for grading and paving streets was *an exercise of the taxing power,* and the city authorities under their charter had the exclusive power to determine when a street should be paved and graded; and had the power too, to assess the expense thereof upon abutting owners according to the frontage of their respective properties. And further, that an assessment thus made, was not liable to the objection of "taking *property without due process of law,"* even though the ordinance did not provide for notice and hearing on the part of the lot-owners, for the reason that the city authorities, in providing that the expense of the improvement should be apportioned by the front-foot rule, had themselves determined the contribution of each and every owner of abutting property. And this being so, nothing was left to the *discretion and judgment of the City Commissioner.* We say nothing was left to his judgment or discretion, because when the cost of grading and paving is once ascertained, the contribution of each lot-owner toward the expense, is absolutely fixed by the frontage of his property. The precise amount of such contribution under the front-foot rule, is simply a matter of arithmetic,

—nothing more or less; and notice and hearing on the part of the owner, would in no manner affect the result. If any mistake shall have been made in the apportionment itself, that is, if any owner shall have been assessed more than his proportion of the expense estimated by the frontage of his property, the law affords ample remedy by which such mistake may be corrected. Such was the deliberate judgment of this Court in "*the Johns Hopkins Hospital Case;*" and this judgment was subsequently affirmed without dissent in *Moale, et al. vs. Mayor, etc., of Baltimore*, 61 *Md.*, 224, and affirmed too in the still later case of *Alberger, et al. vs. Mayor, etc., of Baltimore, et al.*, 64 *Md.*, 1.

Now, these decisions we are asked to reverse, because they are, it is said, in conflict with *Spencer vs. Merchant*, in which, according to the appellant's contention, the Supreme Court has, *by implication* at least, decided that a statute, which directs an assessment to be made on property for grading and paving a street, whether by the front foot-rule or in any other manner, without providing for notice and hearing on the part of the owners, is taking "property without due process of law," and, therefore, in violation of the Fourteenth Amendment. The decision of the Court upon a Federal question is, I admit, binding upon us, whatever may be our own opinion in regard to it. But has the Supreme Court *directly or even by implication,* so decided, for the inquiry comes to this ? Now, in *Spencer vs. Merchant* the New York statute directed commissioners to grade and pave Atlantic avenue in the City of Brooklyn, and to apportion the expense thereof *equitably upon* all *lands lying within three hundred feet* on either side of the avenue, taking *into consideration the benefits derived* from the improvement. These assessments some of the land owners refused to pay, and upon proceedings instituted against them, the Court of Appeals of that State decided that

the statute was unconstitutional and void, because it did not provide notice, and afford an opportunity to the property owners of being heard in regard to the question of apportionment to be made by the commissioners. The Legislature then, by a subsequent Act, directed that a sum equal to so much of the original assessment as remained unpaid, together with interest thereon, should be assessed upon the delinquent lot-owners, and directed that the supervisors of the county, after giving public notice to all parties interested, should apportion this sum equitably as between such owners. This Act, it was contended, was also unconstitutional, because it was an attempt on the part of the Legislature to validate a void assessment, and because it was an arbitrary assessment upon the delinquent lot owners, without giving them an opportunity of being heard as to the apportionment between them, and the lots upon which the original assessments had been paid. But the Court of Appeals of that State held that the Legislature had the power to determine the amount of the tax to be raised, and the power to determine upon what property it should be assessed, and as it provided notice to all parties interested to appear and to be heard upon the question of apportionment, the Act was not in violation of the Constitution of that State, nor in violation of the Fourteenth Amendment. This decision was on appeal affirmed by the Supreme Court. In delivering the opinion of that Court, Mr. Justice GRAY says: "When the determination of the lands to be benefited is entrusted to commissioners, the owners may be entitled to notice and hearing upon the question, whether their lands are benefited and how much." But there is, it seems to us, a broad distinction between that case and the one now before us. Here nothing is left to the determination of the City Commissioner. The ordinance passed in pursuance of legislative authority, it-

self determines what property is benefited, and how much it is benefited. That is, it determines that the expense of the improvement shall be apportioned according to the frontage of the property, and the amount thus ascertained is the benefit which each particular lot derives from the improvement. Nothing is left to the discretion or judgment of the Commissioner. It is, as we have said, simply a matter of arithmetic, and notice and hearing on the part of the lot-owner could in no manner affect the result. If it be conceded then, and this is not denied, that the city authorities have the power to apportion the expense of grading and paving according to the frontage rule, we cannot understand on what principle it can be said that notice is necessary to validate the assessment. Nor can we understand how an assessment thus made can be said to be in violation of the Fourteenth Amendment. It can hardly be necessary to say that this amendment does not provide any additional guarantee for the protection of "life," "liberty," or "property" which did not exist before it was adopted. The same guarantee is to be found in the Constitution of this State, and in the Constitution of every State in this country. It is older than all written constitutions. It goes back to the days of *Magna Charta*, and from that time to the present it has been the birthright of every English subject, and as it is now the birthright of every American citizen. And in declaring that no one shall be deprived of his property *"without due process of law,"* this guarantee does not mean, and never has been construed to mean, "judicial process." On the contrary, from the days of *Magna Charta* to the present, the law has provided for the levying and collection of taxes by the most summary process. As applied to the exercise of the taxing power, *"due process"* means, and can only mean, that taxes so levied shall not be levied *arbitrarily*,

without regard to the well settled principles of law as applicable to the taxing power. And the Fourteenth Amendment was never intended to interfere with the rights of a State to levy taxes in the mode and manner recognized by law at the time it was adopted.

It was not intended, say the Supreme Court, "to prevent a State from adjusting a system of taxation in all proper and reasonable ways," nor was it "intended to compel a State to adopt an iron rule of taxation." *Bell's Gap Railroad Co. vs. Pennsylvania,* 134 *U. S.,* 232.

So it does not seem to me that *Spencer vs. Merchant* can fairly be construed as deciding that an ordinance like the one now before us, is in violation of the Fourteenth Amendment; and until that Court shall so decide we ought, I think, to stand by the deliberate judgments of this Court in regard to the question, especially as the City of Baltimore has expended large sums of money in improvements of this kind upon the faith of these decisions, the greater part of which must now be lost if these decisions are reversed. There is nothing certainly in the case of the appellant to commend it to the favorable consideration of the Court. Although the ordinance did not in terms provide that notice should be given to the lot-owners before the assessment was made, the City Commissioner did advertise for proposals for grading and paving the street in the several newspapers published in the city. The work was begun in October, 1886, and prosecuted from time to time till September, 1888. During all this time the appellant stood by and saw the city expending large sums of money in grading and paving this street, without making any objection or protest of any kind against the prosecution of the work. And now, when it has been completed, when her property binding on the street has been improved to the extent of four thousand dollars, she appeals to a Court of equity

County Comm'rs of Calvert County *vs.* Hellen.

to protect her against the payment of her *pro rata* share of the expense; not on the ground that there is any error in the apportionment, but because the ordinance under which the improvement was made is, she says, in violation of the Fourteenth Amendment of the Constitution of the United States. It is in violation, she says, of her constitutional rights, because it did not provide in terms for notice to the lot-owners before the assessment, although, as matter of fact, she knew all the time the mode and manner in which the assessment was to be levied. Under such circumstances as these, her application to a Court of equity is not certainly one which appeals to the conscience of the Court. Such being my views, I must record my dissent to the judgment of the majority of the Court.

(Filed 3rd February, 1891.)