Mr. Justice Shepard
delivered the opinion of the Court:
1. This case is one of four that were argued and submitted at the same time. In common, they involve, more or less, a consideration of what is due process of law with respect to the necessity of notice, and the requisite character and time thereof, as regards special assessments of this kind. Each, however, has some features peculiar to itself, growing- either out of the language of the clause of the appropriation act under which the work was done, or the special character of the improvement made, or the mode of assessment therefor. To make the opinion in this, the first of the cases, cover all, would probably lead to confusion. Hence, we will consider the special features of this case only; at the same time, however, we will, for the saving of time in the other cases, discuss the general questions which are'common in some degree to them all.
*17 2. There has been great contrariety of opinion as regards the extent of the power reposed in the legislative authority and the discretion which it may exercise in the enactment of statutes imposing special assessments upon adjacent property, for the paving of streets and alleys and the construction of sidewalks in cities. To a consideration of some of the questions involved we shall recur later. There seems to be universal agreement, however, that when a valid act therefor shall have been passed, it must be construed with strictness and followed in every substantial particular by those charged with its execution. The act of 1888, under which this work was done, provided for the improvement and repair of alleys and sidewalks and the construction of sewers. It does not authorize the paving of streets or gutters. A gutter is a part of a street improvement, and might be included therein without especial mention; but it cannot be said to be embraced in the construction of a sidewalk, curbing is not, strictly speaking, a part of the sidewalk, though it may be considered an adjunct thereto and therefore included in it. Schenley v. Commonwealth 36 Pa. St., 40. Whether it is to be so considered, or as a part of the gutter, would largely depend upon the language of the act authorizing the improvement, the character and extent of the work to be done, and possibly upon the circumstances of the particular case. It is not necessary for us to decide, however, whether the act in question contemplated the putting in of curbing as a part of the sidewalk improvement. The petition of Norment, one of the owners of abutting property, asked for the construction of “ curb, gutter and sidewalk.” The Commissioners ordered the curb and gutter only. Hence, it cannot be contended the curb was laid as a part of the sidewalk. It must be regarded as a part of the gutter or street improvement, neither of which is within the terms of the law.
3. The objection that petitioner’s property did not abut on the sidewalk, the improvement of which was requested, is not well taken. The “parking” of some twenty feet in *18 width intervening between the building and the sidewalk is a part of the scheme for street improvement adopted generally in the city of Washington. But whilst the maintenance of this space, free from building, is, in a measure, for the public convenience and benefit, it is not for the general use of the public, cannot be occupied or obstructed for such use, and is really a private easement of the adjoining owner. It can no more be said to prevent the lot from abutting (in the sense of the statute) on the sidewalk, than can the sidewalk be said to prevent it from abutting on the street proper. The soundness of the opinion in Johnson v. The District, 6 Mackey, 21, is not questioned; it has no application to this question.
4. It is contended on behalf of the petitioner that the appropriation in the act of 1888, is based exclusively upon the “ permit system ” in practice at that time. As we have seen in the statement of the case, this “permit system” grew up of itself, and was not originated by any statute. Under it, the custom was for the District to make the improvement, jrhen requested by the owners of abutting lots, furnishing the material free and charging them with the cost of the labor only. The appropriations for 1883-4-5-6 and 1887 cover only “materials for permit work,” in accordance with the prevailing system. The act of 1888 omits the words “materials for permit work,” and makes the appropriation generally “ for the improvement of alleys and sidewalks and the construction of sewers under the permit system.” It also provides that instead of the labor Cost as formerly, one-half the “ total cost ” of the improvement .shall be charged against the abutting property. Doubtless it was the intention of the District Commissioners that Congress should in this appropriation act, not only recognize and continue in force the old permit system, but also establish a new one, for they gave the section, as enacted, that interpretation, and under it instituted the “ compulsory permit system,” which is relied upon as affording a legal foundation for the assessment under consideration.
*19 This interpretation is founded on the last proviso, which if taken alone tends somewhat to that conclusion. But the section must be considered as a whole in order to ascertain its meaning. Full effect must be given to the first proviso, which reads thus: “ Provided, that the property owners requesting such improvement shall pay one-half of the total cost.” More important still, is the omission to include in the last proviso or clause certain .provisions absolutely necessary to the valid inauguration of a compulsory system.
The first proviso would be meaningless, unless intended to give continued effect to the old permit system based upon the request of the lot owners, with a change merely in the manner of the apportionment of the expense of the improvement. It is true that the voluntary and the compulsory system of improvement may stand together without inconsistency, and operate jointly in the public interest; for then when property owners, by refusing to request, might stand in the way of an improvement demanded by the public health, convenience and comfort, the Commissioners could nevertheless undertake it and make them bear one-half the burden.
We would hesitate to hold that the double system was not authorized in the act, were it not, as we have before intimated, for the omission of certain requirements necessary to the validity of the provision, if to be considered as compulsory. No provision is made for notice to non-requesting lot owners at any stage of the proceedings. No rule is given by which the apportionment of the cost is to be made upon the abutting property. There is nothing to indicate whether the apportionment shall be in proportion to value, to benefits received, or to linear frontage. No notice, no opportunity to be heard is given to the owners. The absence of some, at least, of these necessary provisions, is utterly inconsistent with the idea of the establishment of a separate and compulsory system, dependent alone for its operation upon the discretion of the Commissioners. They would, however, be unnecessary under the old permit system, for *20 where the work can only be done upon the request of the owners themselves, notice would be idle, and a hearing wholly unimportant and unnecessary. The improvement being upon the demand of the owner, the sole matter for the consideration of the Commissioners would be whether the work is also demanded in the interest of the public to such an extent as to justify them in ordering it done, one-half at the public expense.
In our opinion, the proper interpretation of the statute is, that the lot owner cannot compel the improvement to be made, and the public authorities cannot force it upon him.
In this case, one of the owners of abutting property petitioned the Commissioners to construct a “ curb, gutter and sidewalk ” along the street where petitioner’s property is situated. Petitioner did not join in the request, and it does not appear that he ever had knowledge of it even. In the exercise of their discretion, the Commissioners saw proper to construct the curb and gutter only. After the work was done, they apportioned the cost among the abutting owners in proportion to their linear frontage, and then notified petitioner to pay the amount assessed against him. Having neither joined in the request for the improvement, nor acquiesced therein in any such manner as would estop him from denying that it was done with his assent, upon Norment’s request, the petitioner cannot be lawfully charged with any portion of the cost.
5. If the statute under which this work was done could be regarded as inaugurating the compulsory system of sidewalk and alley improvements, it would not follow that this assessment is valid and enforceable. This brings us to the consideration of some of the principles of the system of special assessments for local improvements, now so universal in its operation, which forms so great a part of the taxation laid upon real estate in the cities of the Union. Unfortunately for public and private interests, Congress has never adopted a complete or permanent regulation of the system for the government of the District of Columbia, and *21 to this date these very important matters have been provided for only in the yearly changing and indefinite provisions of the appropriation bills.
It is now quite generally conceded that these special assessments, though savoring in some measure of the exercise of the right of eminent domain, are nevertheless included in the sovereign power of taxation and governed generally by the principles thereof. The old controversy with respect to this must be considered as closed. Cooley on Taxation, 430-
There are two ways in which charges of this nature have been imposed. The first is by act of the legislature, which itself declares the character and extent of the improvement to be made, creates the taxing district, and directs the exact manner in which the assessment for the cost shall be laid and collected. The second, and most general, is by the creation of municipal corporations, local boards and the like, vested with discretionary powers as to some one or all of these matters. The right to impose the special burden is founded in the idea that, whilst the public health, comfort and convenience demand the improvements, their construction is, at the same time, of special and peculiar benefit to certain private property in the immediate vicinity. Upon this theory the power absolutely depends. Where there is not this special benefit there can be no valid assessment. The legislature itself, though vested with the widest discretion, cannot create this special benefit by the mere declaration that it exists.
The special benefit to the property assessed being the limit of discretion, it follows that when this is clearly exceeded, the assessment ceases to be a tax and becomes a taking of the private property for public use without compensation. Tidewater Co. v. Coster, 18 N. J. Eq., 518; State v. Newark, 37 N. J. L., 45 ; Thomas v. Gain, 35 Mich., 155 ; Stuart v. Palmer, 74 N. Y., 183 ; Washington Ave., 69 Pa. St., 352 ; Hammett v. Philadelphia, 65 Pa. St., 146 ; Seely v. City of Pittsburgh, 82 Pa. St., 360 ; Louisville *22 v. Rolling Mill Co., 3 Bush, 416 ; City of Lexington v. McQuillan, 9 Dana (Ky.), 513 ; Crawford v. People, 82 Ill., 557; Gilmore v. Hentig, 33 Kan., 156 ; Barnes v. Dyer, 56 Vt., 469; Dyar v. Farrington, 70 Me., 515 ; 1 Hare Const. Law, 313-315 ; Cooley on Taxation, 460 ; 2 Dillon on Mun. Corp. (4th Ed.), Sec. 761, p. 933.
Where the legislature has declared the improvement to be made, defined the territory to be specially benefited thereby, and regulated the manner in which the cost of the work is to be assessed thereon, courts have sometimes gone to the extent of saying that these declarations, like the necessity for and the imposition of general taxes, are matters entirely within the discretion of the legislature, and therefore beyond the scope of judicial inquiry and action. This doctrine, though doubtless sound in application to the facts of particular cases in which it may have been announced, must be taken with the qualification above stated. Undoubtedly there exists no power in the judiciary to review the action of the legislature in matters entirely within its discretion. With the wisdom or expediency of either general or special taxation the judiciary have nothing whatever to do. But where it becomes manifest that the legislature has exceeded the just and plain limits of its discretion and invaded private right, it is not only within the power of the judiciary, but it becomes their solemn duty also, to make the necessary inquiry and right the wrong. “ Laws which cast the burdens of the public on'a few individuals, no matter what the pretense, nor how seeming their analogy to constitutional enactments, are in their essence despotic and tyrannical, and it becomes the judiciary to stand firmly by the fundamental law in defense of those general, great and essential principles of liberty and free government, for the establishment and perpetuation of which the Constitution itself was ordained.” Washington Avenue, 69 Pa. St., 352.
“Due process of law is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty or property, whether the proceeding be judi *23 cial, administrative or executive in its character.” Stuart v. Palmer, 74 N. Y., 191 ; Murray's Lessee v. Hoboken, L. & I. Co., 18 How., 272 ; Weimer v. Bunbury, 30 Mich., 201.
The judiciary, having no right to take upon themselves the correction of legislative mistakes or errors of judgment, cannot, upon the excuse that perfect justice and equality do not obtain in the provided mode of apportionment of the cost of an improvement, interfere to thwart the purpose of the enactment. It is only of a plain, demonstrable invasion of private rights that they will take cognizance. “All that is required in such cases,” said Field, J., “ is that the charges shall be imposed in some just and reasonable mode according to the benefits received. Absolute equality in imposing them may not be reached; only an approximation to it may be attainable. If no direct and invidious discrimination in favor of certain persons to the prejudice of others be made, it is not a valid objection to- the mode pursued that, to some extent, inequalities may arise.” Hagar v. Reclamation Dist., 111 U. S., 705.
The only limitation in the act. under consideration is that the assessment for one-half the cost shall be laid upon the “abutting property.” This plan, with the addition that it . shall 'be according to linear frontage, though sometimes very unfair in its operation, has very generally been held to be within the limits of the legislative discretion. The manner in which the apportionment, under this act, is to be made between the abutting lots, is left to the discretion of the Commissioners, and it is with the exercise thereof by them, and not by Congress, that we have here to deal.
The fatal defect in the act, and in the proceedings thereunder, is the failure to provide for notice to the owners of property, and an opportunity to them to be heard, at least, before the final settlement of the charge, and lien therefor, upon their property. A proceeding which fastens a charge upon property, for which it may be summarily sold, without notice and an opportunity given the owner to be heard as regards its validity and fairness, is not “ due process of law.” *24 Stuart v. Palmer, 74 N. Y., 183 ; Thomas v. Gain, 35 Mich., 155 ; Ullman v. Mayor, etc., of Baltimore, 72 Md., 587 (overruling Mayor, &c., v. Johns Hopkins Hospital, 56 Md., 1, and re-establishing the doctrine of Baltimore v. Scharff, 54 Md., 499); Gatch v. City of Des Moines, 63 Iowa, 718 ; Griswold College v. City of Davenport, 65 Iowa, 633; Boorman v. Santa Barbara, 65 Cal., 313; Gilmore v. Hentig, 33 Kan., 156; San Mateo Co. v. R. R. Co., 13 Fed. Rep., 722.
“The Legislature can no more arbitrarily impose an assessment for which property may be taken and sold, than it can render a judgment against a person without a hearing. It is a rule founded on the first principles of natural justice older than written constitutions, that a citizen shall not be deprived of his life, liberty or property without an opportunity to be heard in defense of his rights, and the constitutional provision that no person shall be deprived of these ‘ without due process of law/ has its foundation in this rule.” Stuart v. Palmer, 74 N. Y., 190.
Whilst there is a difference of opinion with respect to the stage of the proceedings at which the notice must be given, the mode and form of giving it, and the purpose thereof, there is general concurrence in the view that reasonable notice at some serviceable stage of the proceedings is absolutely necessary to the validity of the assessment. This is maintained in the Supreme Court in an unbroken line of decisions. Davidson v. New Orleans, 96 U. S., 97 ; Hagar v. Reclamation Dist., 111 U. S., 701 ; Spencer v. Merchant, 125 U. S., 345 ; Walston v. Nevins, 128 U. S., 578 ; Palmer v. McMahon, 133 U. S., 660; Lent v. Tillson, 140 U. S., 316; Paulsen v. Portland, 149 U. S., 30.
Many well argued cases hold that this notice must be provided for in the act which confers the power, and that its omission therein cannot be compensated by the fact that the council, board or committee chargéd with the execution of the law may of their own motion provide for notice in the regulations or proceedings which they may prescribe. Stu *25 art v. Palmer, 74 N. Y., 188 ; Kurtz v. Sumption, 117 Ind., 1 ; Ullman v. Mayor, etc., Baltimore, 72 Md., 587.
In the latest decision of the Supreme Court, however, it has been said: “We do not think it essential to the validity of a section in the charter of a city granting power to construct sewers, that there should be in terms expressed either the necessity for or the time or manner of notice. The city is a miniature State, the council is its Legislature, tKe charter is its constitution; and it is enough, 'if in that, the power is granted in general terms, for when granted, it must necessarily be subject to all limitations imposed by constitutional provisions, and the power to prescribe the mode of its exercise is, except as restricted, subject to the legislative discretion of the council.” Paulsen v. Portland, 149 U. S., 38 ; see also Gilmore v. Hentig, 33 Kan., 156.
In accordance with the doctrine of the foregoing case, it •would seem that when Congress shall confer the power upon the Commissioners of the District to make improvements without the request or consent of the owners of abutting property, and assess a part of the cost against them, the act itself need not expressly require notice, provided full discretion is left to the Commissioners in the premises and in accordance therewith they make public and permanent regulations which shall prescribe a fair, reasonable and uniform mode of giving notice to all parties whose property may be affected.
The right to notice and a hearing thereafter was all the more necessary in this proceeding because, as we have seen, the manner of the apportionment of the cost between the owners of the abutting property was left entirely to the discretion of the Commissioners, who, in the exercise thereof, assessed the cost on the basis of linear frontage. This may have been the fairest and most nearly correct form of assessment, but the parties at interest should nevertheless have had a hearing thereon, and the opportunity to show that it was not. “ The imposition of taxes is in its nature administrative and not judicial; but as assessors exercise quasi-judi *26 cial powers in arriving at the value, an opportunity to be heard should be and is given under all just systems of taxation according to value.” Palmer v. McMahon, 133 U. S., 669; Hagar v. Reclamation Dist., 111 U. S., 710; Philadelphia v. Scott, 81 Pa. St., 90; 1 Hare Const. Law, 313.
What has been said herein with respect to notice and hearing as essential requisites to'the validity of a tax must be understood as applying to the character of the tax involved in this case, and to no other.

The cause must be remanded to the Supreme Court of the District of Columbia, with, direction to enter a judgment granting the prayer and motion of the petitioner, in accordance with this opinion ; and it is so ordered.