488 PEOPLE ex rel. NISBET *v.* COMMON COUNCIL.

Third Department, December Term, 1895.     [Vol. 90.

Putnam, J., concurred ; Mayham, P. J., not sitting.

Order affirmed, with costs and disbursements.

*Municipal corporations — audit of a claim — construction of the charter of the city of Amsterdam — veto power of the mayor — reference to an improper committee — effect of the claimant's being denied a hearing before the committee — Laws of 1885, chap. 131, § 31; 1892, chap. 53, § 2.*

When by a special law it is provided that an act or thing shall be done by the authorities of a city, but the specific method is not prescribed, and the charter of the city provides a method for the performance of similar acts, the act authorized to be done by the special law must be performed in the manner pointed out by the charter for the doing of similar acts.

A claim by an attorney for legal services rendered to the city of Amsterdam under chapter 53 of the Laws of 1892, relative to the improvement of Bridge street, is a claim which must be audited and allowed in the manner prescribed by the city charter.

Such a claim is subject, under the charter of the city of Amsterdam, to the veto power of the mayor, the resolution auditing it being one "for the expenditure of money," within the meaning of the charter.

Where a city charter (§ 31, chap. 131 of 1885) provides that a claim against the city must be referred to a "committee on auditing accounts," the reference of the claim to such committee is a condition precedent to its due allowance, and the common council cannot, without thus referring the claim, audit it.

*Semble*, that the claim may be referred to the law committee of the common council for an investigation of its merits, but that the power of the law committee does not extend beyond the investigation of any legal question which may be involved.

Where an investigation of the claim is referred to a committee of a common council, and such committee denies the claimant any right to share in the investigation or to examine hostile witnesses, the claimant is thereby deprived of his legal rights, and the proceedings had before the committee have no effect upon the legal status of the claim.

CERTIORARI issued out of the Supreme Court and attested on the 17th day of May, 1895, directed to the common council of the city of Amsterdam and to William A. Fisher, as mayor of said city, and to Thomas J. Hazlett, as clerk of said city, directing them to certify and return to the clerk's office of the county of Montgomery all and singular their proceedings in reference to the claim of the relator, to the end that they may be reviewed and corrected on the merits by the court.

*Nisbet & Hanson,* for the relator.

*Louis H. Reynolds,* for the respondents.

HERRICK, J. :

This is a proceeding by certiorari to review the proceedings of the common council of the city of Amsterdam in auditing the claim of the relator against the said city for legal services.

By chapter 53 of the Laws of 1892, entitled "An act to provide for the improvement of Bridge street, in the city of Amsterdam," the city of Amsterdam was authorized to make certain public improvements, and for that purpose was empowered to take proceedings to acquire such real property as might be necessary to be used, and to assess and award the damages therefor. The city authorities determined to act under the authority given them by such act, and took proceedings to condemn property and award damages; and it appears to be conceded that the relator was employed, and legally employed, to conduct such proceedings on behalf of the city. The proceedings were conducted to a conclusion by the relator.

On the ninth day of March, in the afternoon, he presented his bill for the services rendered, and on the eleventh day of March, a resolution was passed allowing such bill at the sum of $4,823.54. On the fifteenth day of March the resolution auditing the relator's bill was vetoed by the mayor. This veto was sustained. The

490 PEOPLE ex rel. NISBET v. COMMON COUNCIL.

Third Department, December Term, 1895. [Vol. 90.

relator refiled his bill and resubmitted it to the common council,. by whom it was referred to the law committee; the law committee was discharged from its further consideration, and the common council passed a resolution allowing or auditing such bill at the sum of $2,523.54.

This is a very general statement of the proceedings sought to be reviewed; they will be examined more in detail in determining the questions of law involved.

Section 2 of chapter 53 of the Laws of 1892 provides that the commissioners' fees, " and other necessary costs and expenses (all of which shall be audited and the amounts thereof fixed by the common council), shall be considered part of the expense of said improvement."

Special statutes in relation to a city are to be read in connection with the charter of such city, and made to harmonize with it, if possible, so as to make such laws a complete whole, the same as if such special law were an amendment to the charter.

And where by a special law it is provided that an act or thing shall be done by the city authorities, and the specific method of so doing is not prescribed, and in the charter of the city there is a specified method prescribed for the doing of similar acts or things, then the act authorized to be done by the special act is to be done in the manner pointed out in the charter for the doing of such similar acts or things.

Section 31 of chapter 131 of the Laws of 1885, being the charter of the city of Amsterdam, provides that: " All accounts and claims against the said city, and all accounts and claims for services rendered or moneys expended by any officers within said city, which would be charges and accounts against a town if they were rendered or expended by the officers thereof, shall be presented to the common council, and the same shall be referred to a standing committee of said board to be composed of one member from each ward, to be called ' committee on auditing accounts.' It shall be the duty of said committee to inquire or examine into said accounts, and they may send for persons and papers, and may examine the claimant on oath in relation thereto. The said committee shall report the matters referred to them to the common council either favorably or adversely, with their reasons, and the said common council shall

PEOPLE ex rel. NISBET v. COMMON COUNCIL. 491

Hun.]          Third Department, December Term, 1895.

then hear, examine and determine the same as a board of town auditors, and for that purpose shall possess the powers and be subject to the duties of town auditors."

The process then of auditing claims against the city of Amsterdam, of which the bill of the relator is one, is that it shall be presented to the common council and then referred to the " committee on auditing accounts " to be examined by it and the result of its examination reported to the common council.

There is no evidence that any such course was taken in this case, and so far as can be inferred from the proceedings, it was not referred to the auditing committee.

I have heretofore stated that the claim was presented on the ninth day of March, in the afternoon, and audited on the eleventh. The ninth day of March was Saturday. The election for city officers and members of the common council had taken place on the preceding Tuesday, being March fifth.

It was the duty of the common council to meet on the following Monday at ten o'clock in the forenoon for the purpose of canvassing the votes cast at such charter election, and it was at the meeting held for such purpose that the resolution was passed allowing the relator's bill. There was no meeting of the common council between the time when the bill was presented on the ninth, which presentation was made by filing it with the city clerk, and the meeting on the eleventh, when such bill was allowed, when it could have been referred by the common council to the auditing committee. I think the presumption arises from this statement of facts that the auditing committee never had the bill before it, and never in any way considered it. Indeed, the return states that the bill presented by the relator was never seen by any member of the common council until several days after March eleventh.

The resolution by which the relator's bill was allowed also included the awards of the commissioners for damages, and various other items of expense of the proceedings, in addition to the bill of the relator. The allowance of such bill was, therefore, illegal, and not binding upon the city, because the requirements of the law for the auditing of claims were not complied with.

There is still another objection to this allowance of the claim. The charter of the city of Amsterdam provides that the term of

office of its elective officers shall commence on the Monday following the annual election.   (§ 11, chap. 131, Laws of 1885.)

The mayor's term of office is for one year (§ 12); consequently, the term of the mayor who was in office when this bill was presented would expire on the eleventh day of March, and the term of the new mayor would commence on that day.

Section 34 provides that where the term of office of the mayor shall expire within five days after a transcript of any ordinance, resolution, order or act shall have been filed with him, such ordinance, resolution, order or act shall have no force ; obviously, a resolution passed on the last day of the existence of 'the old common council, on the same day and at the same meeting at which the votes cast at the election for mayor were to be canvassed and the result of such election declared, and on the day when the term, of office of the mayor ceases, is within the meaning of this prohibition.

But, however that may be, the mayor whose term of office commenced on March eleventh vetoed the resolution in question.   By section 34 of the charter of the city of Amsterdam, heretofore referred to, the mayor is empowered to veto all " orders, resolutions or ordinances which shall have passed the common council for the expenditure of money."

The resolution by which the relator's bill was allowed, as I have stated, included a number of other items of expenditure which would very properly come under the head of a resolution for the expenditure of money.

It is contended that a resolution like the one in question is not subject to the veto power of the mayor, because it is said it is not a resolution for the expenditure of money, and it is argued that the resolution for the expenditure of the moneys in question here, within the meaning of section 34, was the resolution or ordinance that was passed which authorized and initiated the improvement; that the ordinance having been passed authorizing the improvement, the necessary expenditures resulting therefrom were chargeable upon the city, and that the direction by the common council to pay them is not an act authorizing the expenditure of money, but is simply a determination of the amount to be paid under such previous authorization.

I cannot accept that construction of the language in question.

The power conferred is one very commonly vested in mayors of cities in this State, and is for the purpose of giving them power and authority over public expenditure, and to enable them to check needless or wasteful expenditure of the public money.

To enable them to do this and fulfill the intent of the statute, it is obvious that it must extend to a resolution or ordinance which authorizes an act to be done which calls for the expenditure of money, and in addition allows them to act upon the resolution or audit of the common council of their respective cities as to the expenses incurred, to determine whether they are necessary, extravagant or wasteful.

It must be apparent that an ordinance providing for a public improvement may be perfectly wise and proper, yet the manner in which it is carried out may be wasteful, extravagant and dishonest; and it is just as necessary that the mayor should have a supervision and check upon the manner in which such improvement is carried into effect, and the expense thereof, as upon the ordinance or resolution which initiates and authorizes the expenditure of money. The first step authorized an expenditure; the last determines the amount and directs its payment; each is a resolution or ordinance " for the expenditure of money," and each is subject to the veto power of the mayor, within the language of section 34.

For these reasons I think the audit and allowance of relator's bill on the eleventh day of March was illegal, and not binding upon the city.

When the mayor's veto came to be considered by the common council, the relator was heard in relation thereto, and at that time presented a number of affidavits as to the value of the services he had rendered; and, upon the veto of the mayor being sustained, he refiled and resubmitted his bill for services to the common council. The common council referred it to its law committee, which proceeded to consider it, and examined witnesses in relation to such claim. The relator asked leave to appear before the committee and take part in said investigation, but the committee refused his request, and did not allow him to come before it, or to examine any of the witnesses summoned by it.

The relator thereupon procured a writ of prohibition, prohibiting the said committee from submitting to the common council the

depositions or testimony taken by it relating to the value of the services of the relator, or submitting any report, finding or decision in relation to said claim. After such writ of prohibition was served, affidavits were procured by members of the common council, or by some one acting in their behalf, as to the value of the relator's services. The law committee was discharged from the consideration of such claim, and the common council then and there, at the same meeting at which the law committee was so discharged, passed a resolution allowing the relator's claim at the sum of $2,523.54.

This last audit and allowance was irregular and illegal. The bill was not presented to the "committee on auditing accounts," and has not been investigated by it, and a report of its investigation made to the common council. Submitting the claim to another committee of the common council will not answer the purpose. I do not mean to say at this time that they had no right to have the matter referred to the law committee to investigate any legal question involved; possibly that may be true, but an examination and investigation of the merits of the claim itself should be made by the "committee on auditing accounts."

When the Legislature made that the tribunal for investigating claims, it excluded every other committee of the common council. Further than that, the investigation that was conducted by the law committee was illegal; it was not such a hearing of the relator's claim as the law contemplates. He was given no opportunity to confront and examine the witnesses produced against him; the bill was considered by that committee in executive session, which means a secret session, when he could not be present to hear or answer the arguments against the allowance of his claim. He asked to appear before the committee and his request was refused. A hearing and investigation conducted in such a manner cannot be tolerated in law, and can lay no foundation for valid action by the city authorities. He was compelled to submit his claim to the common council. That body was made the court to pass upon his rights. Before his rights could be determined, he was entitled to "an opportunity to be heard and to defend, enforce and protect his rights." A failure to give him such opportunity to enforce his claim is depriving him of due process of law in enforcing his rights.

(*Stuart* v. *Palmer*, 74 N. Y. 183–191; *People* v. *O'Brien*, 111 id. 1–62.)

For these reasons I think the writ of certiorari must be sustained, and the audit and allowance of the relator's claim by the common council vacated and set aside, with fifty dollars costs and disbursements of these proceedings to the relator.

MAYHAM, P. J., concurred; PUTNAM, J., not acting.

Writ of certiorari sustained, with fifty dollars costs and disbursements.