HENRY C. ENGLISH vs. THE MAYOR AND COUNCIL OF
WILMINGTON.

QUESTION OF LAW RESERVED BY THE SUPERIOR COURT FOR
NEW CASTLE COUNTY.

**Constitutional Law. Municipal Corporation. Assessments for Sewers.**—
The Act of April 29, 1891, providing that the cost of constructing a complete
sewer system for a city shall be assessed on all property adjoining a sewer,
or with access thereto, at a fixed and uniform rate per foot of frontage, and
per square foot of area to a certain depth, is a valid exercise of legislative
discretion in assessing benefits.

**Same.**—It is no objection to such an assessment that the amount thereof is based
on an estimate of the cost of the sewer system.

**Same. Due Process of Law.**—The statute does not deprive the assessed
abutters of their property without due process of law because it does not
provide for notice and hearing before the assessment is levied.

**Same.**—The Legislature may, without notice to the property owners to be assessed,
fix the amount per foot of frontage and square foot of area which property
adjoining a sewer shall be assessed for its construction.

This case came up from the Superior Court in and for New
Castle County on a case stated and questions of law reserved for a
hearing before all the Judges in the Court of Errors and Appeals.
It was a *certiorari* to the Board of directors of the Street and
Sewer Department of the City of Wilmington, brought to test the
the validity of a sewer assessment that had been made a lien upon
lands and building of the plaintiff situated in the City of Wil-
mington at the northwest corner of Gilpin avenue and Adams
street. It appears from the agreed statement of facts and the record
that prior to the 25th day of July, 1892, the Board of Directors
of the Street and Sewer Department of the Mayor and Council of
the City of Wilmington constructed, in accordance with the gen-
eral system of sewerage for the City of Wilmington prepared on

or about December 10, 1890, " a lateral sewer along said Gilpin avenue from a point where it intersects with said Adams street to a point near where said avenue intersects Van Buren street, being a distance of six hundred and seventy feet." On the 27th of July, 1892, in pursuance of a resolution of the said board, " a paper writing purporting to be a certificate of sewer lien on Gilpin avenue between Adams and Van Buren streets was filed with the secretary of said board for collection," said paper containing, *inter alia*, the following:

| Feet Front. | Amount. | Sq. Ft. | Amount. | Total Asst. |
|---|---|---|---|---|
| 117 ft. 6 in. | $8.75 | 11,388 | $113.88 | $172.63 |

The lot of land of the plaintiff abutting upon that portion of Gilpin avenue in which the said sewer was constructed measured 117 feet and 6 inches, and on Adams street measured 100 feet. The clerk of said board transcribed the above entry in a book called " Sewer Lien Book " on the same day, to wit, July 27, 1892, and within 90 days thereafter a bill for said sum of $172.63 was mailed or delivered to the plaintiff, which was the first notice he had of said assessment. The said sum of $172.63 has not been paid, nor any part thereof; and on December 20, 1895, the Mayor of Wilmington issued his warrant, under the seal of said city, directed to said board, commanding them to levy the said sum, interest and costs, on the grounds and buildings of the plaintiff. In pursuance of the said warrant the board advertised the said property for sale on December 21, 1895, and on December 20, 1895, the plaintiff sued out of the Superior Court of the State of Delaware in and for New Castle county (he having first entered into a recognizance in the sum of $800, approved by the Prothonotary of the said Court) a writ of *certiorari* against the Mayor and Council of Wilmington. The assessment was made under an act of the Legislature passed April 29, 1891, which provided for the construction by the Mayor and Council of Wilmington, through the agency of the Board of Directors of its Street and Sewer Department, of a

complete system of sewerage, to be extended, as the public neces-
sity might require, over the whole City of Wilmington.   This act
determined how the cost should be borne, as between the public and
the estates benefited, providing that two-fifths should be paid for
by municipal taxation out of the annual appropriation for streets
and sewers, and three-fifths should be paid for by the abutting prop-
erty upon the streets or highways in which the sewers might be
constructed at the time of completing such sewers; the whole cost,
approximately estimated in advance, to be apportioned " to each
lineal foot of sewer to be built " in accordance with the plan adopted,
and " apportioned alike upon each and every size of sewer, be it a
lateral or trunk sewer." The act also fixed the basis of apportion-
ment as between the individuals benefited, the abutting property
owners, providing as follows :

" SEC. 3. All assessments shall be made upon the properties
abutting upon that portion of any street or highway, lane, or alley,
in which any public sewer may be constructed under this provision,
at the rate of fifty cents for each front foot of such property upon
such street, highway, lane, or alley, and one cent for each square
foot of such property upon such street, highway, lane, or alley, and a
line not exceeding one hundred and fifty feet distant from and par-
allel with the line of such street, highway, lane or alley : provided,
however, that where any property is situated between two streets or
highways, the area upon which said assessment of one cent per
square foot is made shall not extend to more than one-half the dis-
tance between such streets or highways : and provided, also, that
when any property is situated at the corner of two streets or high-
ways, or otherwise so situated as to be assessed for the expenses of
building a sewer on one of such streets or highways, that portion
of such property assessed for a sewer in one of such streets or
highways shall not be liable to be assessed upon its area for the cost
of constructing a sewer in the other of such streets or highways,
but only for one-half of its side frontage upon such streets
or highways : provided, however, that said side frontage is one

hundred and fifty feet or less: and provided also that no property or portion of property shall be assessed for the construction of any sewer, unless such property or some portion thereof shall abut and be bounded upon the street on which said sewer shall have been constructed, or unless such property or a portion thereof has a right of access to said street or highway by a private alley, or desires to use said sewer before a sewer is constructed upon the street or highway upon which said property abuts, in which case the said property shall be liable for the same assessment as though the sewer was constructed in the streets or highways upon which said property abuts, and the said property shall not be liable for any further assessments for sewer purposes."

It further establishes by Section 4 the right of the assessed land to connect with such sewers, and in Section 6 provides for the same assessment upon lands abutting upon streets wherein sewers had been constructed previous to the passage of the act.

The agreed statement of facts contains also the following, *inter alia:* (1) That on or about the 10th day of December, A. D. 1890, with a view to the passage of the present sewer law, the Street and Sewer Department prepared a system of sewerage for the entire city. It did this in the following manner: (a) It made two maps, showing the sewerage of the whole city, of which that marked 'A' is one. (b) It then ascertained the total cost of the entire system for the whole city, which it found to be $1,741,000. (c) It then ascertained the building area of the whole city, and, finding that the streets of said city comprised one-fifth of said area, placed one-fifth of said cost upon the city; and finding, further, that the construction of manholes and inlets and their appurtenances would cost one-fifth of said amount, also placed this additional one-fifth upon the city, or a total cost of two-fifths of said amount upon the city. The other three-fifths was to be borne by the property owners. (d) It then found that three-fifths of the whole amount was equivalent to fifty cents per front foot, and one cent per square foot, and in this manner the present rate was fixed. One typical section of the above plan was then taken, said section being

marked 'B,' in which the streets were all laid out and building areas well defined. The whole cost of construction of the sewerage system in this typical section was then approximately determined, and found to be $340,528. The whole area of this section was then measured from the data upon the plan, and was found to be 15,535,115 square feet. The whole area of the streets was then found upon the same data to be 3,107,023 square feet, or one-fifth of the whole area of the typical section. The frontage assessable was found to be 174,729 lineal feet. This typical section of the above plan, cost, etc., embodying the above principle, which is shown by exhibit marked ' E,' with maps, data, and general information, were then laid before the Legislature, and the whole system fully explained to that body, after which, and in accordance with which, the Legislature then passed the present law. (2) The total cost of constructing the above system of sewerage for the whole city was worked out by sections, of which that marked 'D' represented sections H, K, and I. The other sections were worked out in the same manner, and after the report of the same was printed, in compliance with the orders of the said department, and read before the said board, and adopted by it, the report destroyed, said report being marked 'D.' (3) The sewer on Gilpin avenue was ordered to be built by a resolution of the Board of Directors of the Street and Sewer Department bearing date the 24th day of May, 1892.

The questions reserved for the decision of the Court included certain alleged departures from the statute itself in the course of the proceedings, but the principal questions were raised by objections to the constitutionality of the act. It was said, first, on the part of the complainant, that the act " is unconstitutional, because it authorizes and directs an arbitrary sum of money to be imposed or assessed on property abutting on any street, in which a sewer may be constructed, irrespective of the cost of said sewer, and without reference to any benefits, special or otherwise, conferred on said property by the construction of said sewer;" and, further, that " the act arbitrarily exacts fifty cents a lineal foot, and one cent a square

foot to the depth of one hundred and fifty feet," and, " if the amount thus raised is in excess of the cost of the sewer, as to the excess, it is the taking of private property without consent and without compensation."   Second, that the Legislature had no right " to determine the amount of money which the plaintiff was to pay towards the cost of constructing said sewer on Gilpin avenue, without notifying him of their intention to do so, and thereby giving him an opportunity to be heard in the matter."   And, that the act is unconstitutional if it provides " that the board of directors of the street and sewer department should act in making assessments for the cost of construction of sewers without notice to the owner of the property on which a lien was to be created, and without giving him a hearing, or at least an opportunity to be heard."

*Walter H. Hayes, Hugh C. Browne, Peter L. Cooper* and *James H. Hoffecker, Jr.,* for the plaintiff.

It appears from the record filed in this cause in the Superior Court that the Board of Directors of the Street and Sewer Department, of " The Mayor and Council of Wilmington " *is a tribunal that exists only by virtue of statutory enactment, its procedure is summary* and *not in accordance with the common law.*   And that there is no *method or means* provided in the statutes *by which the proceedings of said directors can be reviewed;* there is both an extraordinary *jurisdiction* and an extraordinary *procedure,* and that summary.

In such cases the common law provides the writ of *certiorari* as a remedy, not to review questions of fact, but in order that it may be determined by a Court of the highest original jurisdiction, whether the statutory tribunal or jurisdiction has proceeded regularly or not, and whether the law which authorizes such proceedings is constitutional or not; at common law this writ issued out of the Court of Chancery, King's Bench or Common Pleas; 1 Tidd, Practice 397; 1 Archb. Practice 230; 2 Bacon Abr. 167; Com. Dig. *Certiorari* (334); *Groenvelt vs. Burwell,* 1 Salk. 145,

s. c.; *id.* 263; 12 Mod. 386-390; 1 Com. Rep. 76-80; 1 Ld. Raym.
454-469; *Rex vs. Inhabitants, Glamorganshire*, 1 Ld. Raym. 580;
*Scott vs. Bye*, 2 Bing. 343.

In Delaware the whole of this revisory power that existed in
the Courts of Chancery, King's Bench and Common Pleas, at the
the time of the adoption of our Constitution, was and still is vested
in the Superior Court. Rev. Code 697.

This rule of the common law has been generally recognized
and adopted in the several States of the United States, and espe-
cially so in this State. *Fonda vs. Canal Com.*, 1 Wend. 289;
*Lawton vs. Com. of Cambridge*, 20 Rep. 179-182; *LeRoy vs. Mayor*,
20 John. 429, 433, 437, 438, 439 and 441; *Heywood vs. Buffalo*,
14 N. Y. 534; *People vs. Jefferson*, 55 *id.* 604; *Durant vs. Law-
rence*, 1 Allen 125; *Brimmer vs. Boston*, 102 Mass. 19; *Butler vs.
Worcester*, 112 Mass. 541-556; *Kelso vs. Boston*, 120 Mass. 297;
*Taber vs. New Bedford*, 135 Mass. 162; *Snow vs. Fitchburg*, 136
Mass. 179-182; *State vs. Newark*, 25 N. J. L. 399; *Swan vs.
Cumberland*, 8 Gill (Md.) 150; *Milwaukee Iron Co. vs. Schuhel*,
29 Wis. 444; *Adams vs. Newfame*, 8 Vt. 71; *Ewing vs. St. Louis*,
5 Wall. 413, 418; 2 Dill. Mun. Corp. § 925; Harris, Certiorari,
§45; *Jeans vs. Jeans*, 3 Harring. 136-138; *King's Admr. vs. Hud-
son*, 2 Harring. 135; *Justis et al. vs. Lindsay*, 2 Harring. 145;
*West vs. Stockley*, 4 *id.* 108; *Murphy vs. Wilmington*, 6 Houst.
108, 135, 136, 138.

In addition to these authorities we call the attention of the
Court to the fact that in many of the cases cited by us in support
of our argument on the questions which go to the merits in this
cause, the procedure was by the writ of *Certiorari.*

The Board of Directors of the Street and Sewer Department
is the agent of the corporation known as " The Mayor and Council
of Wilmington," and is the creation of the Legislature. It pos-
sesses, and can only exercise those powers which are : *First*, granted
by *express words; Second, those necessarily implied* in or *incident* to
the powers expressly granted; *Third*, those *essential* to the declared
objects and purposes of its creation—not simply convenient, but

*indispensable.* Any fair reasonable doubt concerning the existence of its power will be resolved by the Court against the board and the power denied. Said board *could exercise no power* in constructing said sewer unless it either was expressly conferred on them by the General Assembly, or unless it was indispensably necessary for the construction of said sewer, and was therefore within the fair intent and purpose of their creation. 1 Beach Pub. Corp. § 538 ; Dillon, Municipal Corp. §§ 89-91 ; Elliott, Roads and Streets 372-373.

If, therefore, upon the consideration of this case, there be fair, reasonable and substantial doubt whether the Legislature intended to confer the authority upon said board to proceed and act in the way they have done, particularly as the exercise of this power is attended with burden on the citizens of Wilmington, abridges their natural and common rights and may divest them of their property, that doubt must be resolved in favor of the citizen and against the board and municipality. Elliott, Roads and Streets, 371-372-373 ; Dillon, Mun. Corp. § 91, n. ; *Sharp vs. Speare,* 4 Hill (N. Y.) 76, 81 ; *Penn. R. R. Co. vs. Canal Com.,* 21 Pa. 1, 22 ; *Minturn vs. Larue,* 23 How. 435, 436 ; *Thompson vs. Lee Co.,* 3 Wall. 320 ; *Thomas vs. Richmond,* 12 Wall. 349 ; *Fertilizing Co. vs. Hyde Park,* 97 U. S. 559 ; Grand Rapids Co.,33 Fed. Rep. 667, 668.

As the said board derives its authority solely from the Legislature, so that power must be exercised in the *mode and manner* prescribed in the acts creating and governing them. They must have complied substantially with all the requirements of law in constructing said sewer from beginning to the end. Their grant of power to make assessments for public sewers will be strictly construed, and they were required to strictly follow them. Everything that the statutes directed to be done by the board before it, makes said alleged assessment was jurisdictional to the act of assessment. If they failed to comply the assessment is void. Elliott, Roads and Streets, 372, 382, 384 ; Dillon Mun. Corp. § 769 ; Beach, Pub. Corp. §§ 557, 1177 ; 2 Desty, Taxation, 1241 ; *Merritt vs. Port Chester,* 71 N. Y. 309.

Argument for Plaintiff.

It is only as a branch of the taxing power that local assessments upon property specially benefited, or legislatively declared to be specially benefited, are imposed. Taxation implies an imposition for a public use; and it also implies that the imposition shall be apportioned so as to secure uniformity among those who are, or ought to be, subject to the particular tax or assessment. Special benefits to the property assessed, that is benefits received by it in addition to those received by the community at large, is the true and only just foundation upon which local asssessments can rest. Although the Legislature possesses this power and may delegate it to " The Mayor and Council of Wilmington," yet it is subject to certain limitations which are founded on natural rights and natural justice older than written constitutions.

The greatest of these natural rights is, that every law which afiects a man in his life, liberty or property, shall hear before it condemns or deprives him of his property. For this is an essential principle, of natural justice. 1 Bla. Com. 138; Black, Const. Law 419-423; Hare, Const. Law 313, 314, 315, 748-754, 845, 870, 871; Cooley, Taxation 2nd Ed. 54, 363; Dr. Bonham's case, 8 Co. Rep. 234; *Day vs. Savage*, Hobart 85-87a; Rooke's case, 5 Co. 100 ; Case of Chester Mills, 10 Co. 138; Bagg's case, 11 Coke's Reps. 99 ; *London vs. Wood*, 12 Mod. 669-687 ; *King vs. University of Cam.*, 1 Strange 557-567 ; s. c., 2 Ld. Ray. 1334-1348; 8 Mod. 158-164; *King vs. Benn*, 6 Term. 198 ; *Capellvs. Childs*, 2 Cr. & J. 558, 577, 579; *Painter vs. Liverpool*, 6 Nev. & M. 736 ; *Hammond vs. Bendyshe*, 13 Ad. & El. 869, 872 ; *Wingate vs. Waite*, 6 Nev. & M., 739, 746; *Cooper vs. Board of Works*, 108 Eng. Com. L. 180-190; *Hoke vs. Henderson*, 4 Dev. (N. C.) 1-15; *Jones vs. Perry*, 10 Yerg. (Tenn.) 59; *Taylor vs. Porter*, 4 Hill (N. Y.) 140-146 ; In re Johns & Cherry Sts., 19 Wend. 690, 675, 676 ; *Sharpe vs. Speir*, 4 Hill 76, 81, 83, 84; *Griffith vs. Mixon*, 3 Miss. 424; *Van Horn vs. Dorrance*, 2 Dall. 310, 313; *Rothwell vs. Nearing*, 35 N. Y. 306 ; Rutherford's case, 72 Pa. 82; *Com. vs. Cambridge*, 4 Mass. 627 ; *McVey vs. United States*, 11 Wall. 259-266; *Underwood vs. McVeigh*, 3 Otto 274-277 ; *Harris*

Statement for Plaintiff.

*vs. Hardeman*, 14 How. 340; *Aldrich vs. Kinney*, 4 Conn. 434; *B. & O. R. R. vs. P. W. & Ky. R. R.*, 17 W. Va. 813-834, 835; Johns Hopkins Hospital case, 56 Md. 1, 45; *Darling vs. Gunn*, 50 Ill. 424; *N. Y. R. R. vs. New Haven*, 42 Conn. 279; *Butler vs. Saginaw*, 26 Mich. 22; *Jones vs. Wooten*, 1 Harring. 77, 81; *Rice vs Foster*, 4 Harring. 479-485; *Del. R. R. Co. vs. Tharp*, 5 *id*. 454.

In England by statute 23 Henry VIII, the *cost* of building sewers was assessed by the commissions according to the special benefits, and then only after notice to the land owner and a hearing, if this was not done the assessments were void; Rook's case 5 Co. 100; *Kelley vs. Boyer*, Croke Jac. 336; Case of Chester Mills, 10 Co. 138; *Bow vs. Smith*, 9 Mod. 94; 3 Bla. Com. 73; *Moor vs. Scroggs*, 3 M. & Sel. 447; *Stafford vs. Houston*, 2 Brod. and B. 691; *King vs. Sewer Coms.*, 7 East 71-80; *Regina vs. Warton*, 110 Eng. Com. Law 719-730.

The Constitution of Delaware says, " Nor shall any man's property be taken, or applied to the public use without the consent of his representatives, and without compensation being made;" Art. 1, Sec. 8.

The Constitution of the United States provides, " Nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws;" Amendment XIV.

" It is declared in the Declaration of Independence " that all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness. That to secure these rights, governments are instituted among men, deriving their just powers from the *consent of the* governed." And again that " The history of the present king of Great Britain is a history of repeated injuries and usurpations, all having in direct object the establishment of an absolute tyranny over these states."

And to prove this he was charged among other things "*For imposing taxes on us without our consent.*"

The exceptions filed in this case are sixteen in number and raise several questions of law, all of which however, may be collected under three main heads.

First. Questions involving the right and authority of the Board of Directors of the Street and Sewer Department, to make said alleged assessment under any existing laws of this State.

Second. Questions which go to the regularity of the proceedings of said Board in making said alleged assessment and entering said liens.

Third. Questions which are necessarily compound of both the regularity of proceedings of said Board in making said alleged assessment, and the constitutionality of the law under which they claim to have acted.

In support of the exceptions under the first head, which raise the question of the constitutionality of Chapter 209, Volume 19 Laws of Delaware, we submit the following propositions:

1. That the General Assembly itself could not arbitrarily determine the amount of money which the plaintiff was to pay toward the costs of constructing said sewer on Gilpin avenue, without notifying him of their intention to do so, and thereby giving him an opportunity to be heard in the matter, and it could not delegate such authority to the Board of Directors of the Street and Sewer Department of " The Mayor and Council of Wilmington;" 1 Bla. Com. 138, 139, 140; Cooley, Const. Law 355, 356; Hare, Const. Law 312-317, 875; Desty, Taxation 1246, 1254; Cooley, Taxation (2d Ed.) 265, 266, 361, 363, 364, 365 and 366; Black, Const. Law 423; Elliott, Roads and Streets 415; Dillon, Mun. Corp. §§ 606, 802 a. 803; Beach Pub. Corp. §§ 1185-1188; 1829, *Wilkinson vs. Leland,* 2 Pet. 627, 657; 1829, *Turnpike Co. vs. Hall,* 2 Harrison N. J. 337, 339 c; *White vs. White,* 5 Barb. 474, 482-483; 1855, *State vs. Jersey City,* 24 N. J. L. 662-666 c;

1856, *State vs. Newark*, 25 N. J. L., 399, 411, 426 c; 1855, *State vs. Jersey City*, 4 Zabr. 665, 666 c; 1855, *Murray vs. Hobk. Land Co.*, 18 How. 272, 276, 277; 1859, *Patten vs. Green*, 13 Cal. 325, 326–330; 1865, *State vs. Newark*, 31 N. J. L. 360, 363; 1865, *Phila. vs. Miller*, 49 Pa. 440, 448; 1868, *Salem vs. East. R. R.*, 98 Mass. 431, 442, 443; 1869, *Darling vs. Gunn.*, 50 Ill. 424; 1870, *Hammet vs. Phila.*, 65 Pa. 146, 151; 1871, *In re Washington Ave.* 69 Pa St. 352, 358; 1872, *People vs. Saginaw*, 26 Mich. 22–27; 1873, *State vs. Trenton*, 36 N. J. L. 499, 504; 1874, *Weimser vs. Bruninberg*, 30 Mich. 201, 213; 1874, *Seifert vs. Brook*, 34 Wis. 444, 446; 1874, *Powers Appeal*, 29 Mich. 504; 1875, *State vs. Elizabeth*, 37 N. J. L. 353, 357; 1875, *State vs. Plainfield*, 38 N. J. L. 95, 97; 1875, *Paul vs. Detroit*, 32 Mich. 108, 116, 117; 1875, *Overing vs. Foote*, 65 N. Y. 263, 269; 1875, *Kennard vs. Louisiana*, 92 U. S. 480, 483; 1877, *State vs. Morristown*, 34 N. J. L. 445, 452, 454; 1877, *Flint vs. Fon Du Lac*, 42 Wis. 287, 298; 1877, *Thomas vs. Gains*, 35 Mich. 154, 163, 164; 1877, *Pound vs. Chippewa Co.*, 43 Wis. 63; 1877, *McMillen vs. Anderson*, 95 U. S. 37, 41; 1877, *Davidson vs. New Orleans*, 96 U. S. 97, 101–106; *Stuart vs. Palmer*, 10 Hun 23; 1878, *Stuart vs. Palmer*, (Appeal) 74 N. Y. 183, 185–195; 1879, *State vs. Road Comrs.* 41 N. J. L. 83, 89; 1880, *In re Village of Middletown*, 82 N. Y. 196, 201; 1880, *Baltimore vs. Scharf*, 54 Md. 479, 517, 518–526; 1880, *Johns Hopkins Hospital case*, 56 Md. 1, 44–49; 1881, *Mulligan vs. Smith*, 59 Cal. 204, 230, 234, 237, 243; 1882, *Albany Bank vs. Mahon*, 20 Blatch. 341–343; 1882, *Albany Bank vs. Mahon*, 9 Fed. Rep. 884, 885; 1882, *Campbell vs. Dwiggins*, 83 Ind. 473, 480; 1882, *San Mateo Co. vs. South P. R. R.*, 13 Fed. Rep. 722, 1882, *Santa Clara Co. vs. S. P. R. R.*, 18 *id.* 385, 451; 1883, *Hagar vs. Reclamation Dist.* 111 U. S. 701, 707–711; 1884, *Whitford vs. Probate Judge*, 53 Mich. 130; 1884, *Gatch vs. Des Moines*, 63 Ia. 718, 721–724; 1885, *Griswold vs. College*, 65 *id.* 633; 1885, *Auer vs. Dubuque*, *id.* 651; 1885, *Spencer vs. Merchant*, 100 N. Y. 585; 1887, *Remsen vs. Wheeler*, 105 *id.* 573, 578, 579; 1887, *Garvin vs. Daussman*, 114 Ind. 429, 432; 1887,

*Spencer vs. Merchant,* 125 U. S. 345; 1888, *Kuntz vs. Sumpton,* 117 Ind. 1, 3–9; 1888, *Scott vs. Toledo,* 36 Fed. Rep. 384, 386, 392, 396, 397–401; 1889, *Murdock vs. Cincinnati,* 39 *id.* 891; 1890, *Palmer vs. McMahon,* 133 U. S. 660, 662, 668, 669; 1890, *McEnery vs. Sullivan,* 125 Ind. 407, 409; 1891, *Lent vs. Tillson,* 140 U. S. 316, 326–328; 1891, *In re Trustee Union College,* 129 N. Y. 308–313; 1891, *Ulman vs. Baltimore,* 72 Md. 587, 588–596; 1891, *Bradley vs. Miller,* 124 N. Y. 510; 1892, *People vs. Henion,* 19 N. Y. Sup. 488; 1892, *Paulsen vs. Portland,* 149 U. S. 30, 38-41; 1893, *Swain vs. Fulmer,* 135 Ind. 8–12; 1894, *People vs. New Rochelle,* 83 Hun 185; 1895, *In re Brooklyn,* 87 Hun 54; 1895, *Kizer vs. Matchler,* 141 Ind. 694, 696; 1896, *Iowa R. R. vs. State,* 160 U. S. 389, 393; *Murphy vs. Wilmington,* 6 Houst. 108, 135, *Hartman vs. Wilmington,* 1 Marvel 215.

2.   If the General Assembly by Chapter 209, Volume 19, Laws of Delaware, intended, in proceedings under it, that the Board of Directors of the Street and Sewer Department should act, in making assessments for the costs of constructing sewers, without notice to the owner of the property on which a lien was to be created, and without giving him a hearing, or at least an opportunity to be heard, then said act is unconstitutional and void. Cooley, Taxation, 363; Cooley, Const. Lim. *615; Hare, Const. Law 875; Elliott, Roads and Streets 415; Dillon, Mun. Corp. §§ 754–760; Black., Const. Law. 423; *Van Horn vs. Dorrance,* 2 Dallas 304–310; *Colder vs. Bull.* 3 *id.* 386; *Cohoons Coe.* 57 N. H. 556–570, 596, 597; *Bush vs. Baker,* 56 Vt. 143–146; *Butler vs. Saginaw,* 26 Mich. 22; *Darling vs. Gunn,* 50 Ill. 424; *Stuart vs. Palmer,* 74 N. Y. 183; *Scharf vs. Baltimore,* 54 Md. 517; *Baltimore vs. Johns Hopkins Hospital,* 56 Md. 42–44; *Ulman vs. Baltimore,* 72 Md. 587; *People vs. New Rochelle,* 83 Hun 185; *Trustees of Union College,* 129 N. Y. 313; *Phila. vs. Scott,* 81 Pa. 81, 83, 90; *Hurtado vs. Cal.* 110 U. S. 516–534; *Law vs. Johnson,* 118 Ind. 261; *Bank vs. Maher,* 9 Fed. Rep. 881; *Santa Clara Co. vs. R. R. Co.,* 18 *id.* 385; *San Mateo Co. vs.*

*R. R. Co.,* 13 *id.* 722; *R. R. Co. vs. Com.* 115 U. S. 321; *Walston vs. Nevin,* 128 U. S. 578; *Palmer vs. McMahon,* 133 U. S. 660; *Kizer vs. Machler,* 141 Ind. 694–696; *Hagar vs. Reclamation District,* 111 U. S. 701.

3. The General Assembly itself could not arbitrarily impose a burden or tax on the plaintiff's property of fifty cents a front foot and one cent a square foot thereof, amounting in this case to one hundred and seventy-two dollars and sixty-three cents, without reference to the cost of said sewer, and it could not delegate that authority to the Board of Directors of the Street and Sewer Department, and thereupon Chapter 209, Volume 19, Laws of Delaware, is unconstitutional and void. 19 Delaware Laws, ch. 209; City Ordinance Book, 149; Hare, Const. Law 310; Cooley, Taxation, 606, 607, 612–618, 664; Elliott, Roads and Streets 406; Beach, Pub. Corp. § 752–760; Dillon, Mun. Corp. §§ 752–760; *In re Fourth Avenue,* 3 Wend. 452; *In re Albany St.* 11 Wend. 151, 152; *State vs. Elizabeth,* 37 N. J. L. 330; *Tidewater case,* 18 N. J. Eq. 519, 524, 525, 526, 531; *In re Market Street,* 49 Cal. 546–548; *Brooks vs. Baltimore,* 48 Md. 265–269; *Pounds vs. Chippewa Co.,* 43 Wis. 63; *Macon vs. Patty,* 53 Miss. 378–386; *Brown vs. Fitchburg,* 128 Mass. 282; *Chamberlain vs. Cleveland,* 34 Ohio St. 551, 559–570; *Hanscom vs. Omaha,* 11 Neb. 37; *Minn. Co. vs. Palmer,* 20 Minn. 468; *Gilmore vs. Hentig,* 33 Kan. 156–166–169.

4. The act of the General Assembly, (Chapter 209, Volume 19, Delaware Laws) is unconstitutional, because it authorizes and directs an arbitrary sum of money to be imposed or assessed on property abutting on any street in which a sewer may be constructed irrespective of the costs of said sewer, and without reference to any benefits, special or otherwise, conferred on said property by the construction of said sewer. The act arbitrarily exacts fifty cents a lineal foot and one cent a square foot to the depth of one hundred and fifty feet, that is two dollars from a lot one foot

wide and one hundred and fifty feet deep. If the amount thus raised is in excess of the cost of the sewer, then as to the excess it is a taking of private property without consent and without compensation. *In re Canal St.* 11 Wend. 151–154; *Tidewater case,* 18 N. J. Eq. 528–531; *Wright vs. Boston,* 9 Cush. 222, 241; *Sharp vs. Speir,* 4 Hill 82; *Reeves vs. Wood Co.* 8 Ohio St. 333–338; *Alpens vs. Newark,* 8 Vroom 415; *State vs. City of Patterson,* 48 N. J. L. 435; *Minn Co. vs. Palmer,* 20 Mich. 468; *In re Wash. Ave.* 59 Pa. 352; *Seeley vs. Pittsburg,* 82 Pa. 363; *Dyar vs. Farmington,* 70 Me. 515–527; *Gilmore vs. Hentig,* 33 Kan. 156–175.

5. In addition to the above propositions, we submit that the General Assembly by long and uniform legislation on kindred subjects has provided that every person upon whom, or upon whose property a burden is to be imposed, shall either have notice thereof or that he shall have an opportunity to be heard, and that the benefits conferred should be considered. Duke of York's Laws, 122, 146, 203, 185, 318, 222, 233, 254. 256, 280, 285; 1 Del. Laws, 316–320; 2 *id.* 1247, 1255, 1256; Revised Code, 1829, 158–163, 375–376, 468–469; Revised Code, 1852, 166–168, 169, etc., 13–22; Revised Code, 1874, 315, 321, etc., 82–76; Revised Code, 1893, 484, 491–492, 104, 109–111.

As a practical construction by the General Assembly which has been long acquiesced in and operating as a rule of property, this is entitled to great weight. Suth. Stat. Const. § 311; *Hall vs. State,* 4 Harring. 139; *Smith vs. Smith, id.* 532 n; *Neary vs. P. W. & B. R. R.,* 7 Houst. 433, 445, 446; *Dunbor vs. Roxbury,* 3 Clark & F. 335, 353.

All the acts of the General Assembly in relation to the City of Wilmington concerning the assessment of taxes, or burdens, or for condemnation proceedings of every kind, up to the time of the enactment of Chapter 209, Volume 18, Laws of Delaware, provided that the party should have notice that he might have an opportunity to be heard, and with the exception of that act still so provide.

These assessments were made and burdens imposed after a due consideration of the benefits resulting to the abutting property.

It is therefore, most respectfully submitted that for the reasons herein set forth, Chapter 209, Volume 18, Laws of Delaware conflicts both with the provisions of the Constitution of the State of Delaware, and also of the Fourteenth Amendment of the Constitution of the United States.

*Robert G. Harman* and *Horace G. Knowles* for the defendant.

I. The Legislature may devise a general system of sewerage for the whole city, and provide for the levying of assessments to defray the cost of the same.    2 Dillon, §§ 752, 808 ; 2 Beach § 1171 ; *State vs. Jersey City,* 29 N. J. L. 441, 446 ;   *City of Philadelphia vs. Tyron,* 11 Casey (Pa.) 401 at 403 ; *Roosevelt Hospital vs. Mayor of New York,* 84 N. Y. 108.

This the Legislature has done for the City of Wilmington.

II. The Legislature may decide as to *the time when, the place where and the manner how* the work shall be done, and especially as to whether the assessment shall be according to the *benefit, the area, or the front foot rule* system.

(a) Not only is the *front foot rule* system perfectly constitutional, 2 Dillon § 762 ; 2 Beach § 1195 ; 2 Desty 1247 and 1263 ; Cooley, Const. Lim. 629 ; Elliott, Roads and Streets 394 ; Teideman, Police Lim. 479–80 ; *Shelley vs. Detroit,* 45 Mich. 431 ; *Motz vs. Detroit,* 18 Mich. 494 ; *Strand vs. City of Philadelphia,* 61 Pa. 255 ; *Whiting vs. Townsend,* 57 Cal. 515 ; *Emory vs. San Francisco Gas Co.,* 28 Cal. 346 ; *Northern Ind. R. R. vs. Conelly,* 10 Ohio St. 160 ; *Noble et. al. vs. Commissioners Noble Co.,* 5 Ohio St. 521 ; *Allen vs. Drew,* 44 Vt. 174; *Challis vs. Parker,* 9 Kan. 155 ; *Bennett vs. Hutchins,* 11 Kan. 298 ; *Norfolk City vs. Ellis,* 26 Gratt. (Va.) 227 ; *R. & R. R. R. Co. vs. Lynchburg,* 81 Va. 473 ; *Rutherford vs Hamilton,* 97 Mo. 553 ; *Exchange Bank*

*vs. Russell,* 50 Mo. 525 ; *Lipps vs. City of Philadelphia,* 38 Pa. 502 ; *City of Philadelphia vs. Tyron,* 11 Casey (Pa.) 401 · *Woodridge vs. Detroit,* 8 Mich. 274 ; *Williams vs. Mayor,* 2 Mich. 560 ; *Upington vs. Oviatt Treasurer,* 24 Ohio St. 232 ; *City of Springfield vs. Green, et. al.,* 120 Ill. 268 ; *State, Siglar vs. Fuller, Collector,* 34 N. J. 227 ; *Mayor Balto. and Webb vs. Johns Hopkins Hospital et. al.,* 56 Md. 1.

But, says Mr. Cooley, in his work on Taxation, it is not only more practical, but in many instances, even more just than the "benefit rule."   Cooley, Taxation, 451, cited in Mayor Balto. and *Webb vs. Johns Hopkins Hospital et. al.* 56 Md. 1.

And for the purposes of sewerage, it is deemed by Mr. Dillon himself, to be better adapted than to paving and grading, and at the same time to be more just and feasible.    2 Dillon § 809 (note 1.)

(b) And the union of the *frontage* and *area* rule is the best and most equitable of the three.    *Cleveland vs. Tripp,* 13 R. I. 50.

The frontage and area plan is the Delaware rule.

III. The Legislature may either delegate to the municipality ; 2 Beach § 176 ; *Hoyt vs. City Saginaw,* 19 Mich. 39, or, itself, exercise the power of (1) fixing the drainage and taxing district—(2) the amount of the tax or *assessment* and (3) the apportionment of the same ; *Mayor Balto. and Webb vs. Johns Hopkins Hospital, et. al.* 56 Md. 1 ; *People vs. Mayor &c. of Brooklyn,* 4 N. Y. 423 ; *Scovill vs. City of Cleveland,* 1 Ohio St. 126 *Hagar vs. Reclamation District,* 111 U. S. 701 ; *Spencer vs. Merchant,* 125 U. S. 345 ; *Walstan vs. Nevin,* 128 U. S. 578 ; 2 Dillon § 752 ; 2 Beach § 1175 ; Elliott, Roads 393.

This power the Legislature itself has exercised.

(a) *The draining and taxing district* may be divided up into many districts.   2 Desty 1247 ; or may consist of one single dis-

trict for the entire city; 2 Desty 1247; 2 Beach § 1175; *Grim-mell vs. City of Des Moines*, 57 Iowa 144; *City of Philadelphia vs. Tyron*, 11 Casey (Pa) 401; *State vs. Jersey City*, 29 N. J. 441; *Roosevelt Hospital vs. Mayor of New York*, 84 N. Y. 108.

In our law the Legislature made the city one entire district.

(b) *The amount of the assessment* is discretionary with the Legislature.   2 Dillon § 752; 2 Beach § 1175.

And the amount may be ascertained and the rate fixed *before* the work is begun.   *State vs. Jersey City*, 29 N. J. 441; *State Freeholders of Hudson Co. vs. Road Coms.*, 41 N. J. 83; *Scovill vs. City of Cleveland*, 1 Ohio St. 126; *Davidson vs. New Orleans*, 96 U. S. 97; *City of Philadelphia vs. Tyron*, 11 Casey (Pa) 401; *Lipps vs. City of Philadelphia*, 38 Pa. 502.

(c) The apportionment may be in such manner as the Legislature may provide.   1 Desty 94; 2 *id.* 1256; Elliott, Roads 393; *Mayor Balto. and Webb vs. Johns Hopkins Hospital et. al.* 56 Md. 1; *Scoville vs. City of Cleveland*, 1 Ohio St. 126; *State, Sigler vs. Fuller, Collector*, 34 N. J. 227; *State vs. Jersey City*, 29 N. J. 411; *Spencer vs. Merchant*, 125 U. S. 345; *People vs. Mayor &c., of Brooklyn*, 4 N. Y. 423; *Walston vs. Nevins*, 128 U. S. 578; *Cleveland vs. Tripp*, 13 R. I. 50; *Upington vs. Oviatt*, 24 Ohio St. 232; *Commissioners of Laramie Co. vs. Commissioners Albany Co.*, 92 U. S. 357.

And as an *assessment* for the local improvements is neither a " tax " nor " taxation " within the meaning of the various State Constitutions, the doctrine of uniformity and equality is in no way applicable to it.   2 Dillon § 778; Elliott, Roads 370; *City of Peoria vs. Kidder*, 26 Ill. 351; *Canal Trustees vs. Chicago*, 12 Ill. 403; *Burnett vs. City of Sacramento*, 12 Cal. 76; *Chambers vs. Satterlee*, 40 Cal. 497; *Reeves vs. Treasurer Wood & Co. et. al.* 8 Ohio 333; *Boston Serman's Friend Co. vs. Boston*, 116 Mass. 181; *Northern Liberties vs. St. John's Church*, 13 Pa. 104; *Sharp vs.*

*Spier*, 4 Hill N. Y. 76; *State vs. Fuller*, 34 N. J. 227; *Norfolk vs. Ellis*, 26 Gratton Va. 227; *Egyptian Levee Co. vs. Hadin*, 27 Mo. 495; *A. R. R. Co. vs. Lynchburg*, 81 Va. 473; *City of Chicago vs. Colbey*, 20 Ill. 614; *Motz vs. Detroit*, 18 Mich. 495; *City of Bridgeport vs. N. Y. N. H. & H. R. R. Co.*, 36 Conn. 255; *Hoyt vs. City of Saginaw*, 19 Mich. 39.

(1) The burden may be imposed in whole or in part on the abutting property.    2 Beach § 1175.  *Murphy vs. City of Wilmington*, 6 Houst. 108.

And it may be '(a) According to *value* of lots irrespective of buildings; *City of Boston vs. Jesse Shaw*, 1 Met. Mass. 130; *Snow vs. Fitchburg*, 136 Mass. 183; *Mayor of Balto. and Webb vs. Johns Hopkins Hospital, et. al.* 56 Md., 1 ; *Downes vs. City of Boston*, 7 Cush. Mass. 270; 2 Beach § 198; and whether connected with sewer or not; *Allen vs. Drew*, 44 Vt. 174; *Snow vs. Fitchburg*, 136 Mass. 183; *Lipps vs. Philadelphia*, 38 Pa. 502.

(b) According to a certain *percentage*, as not to exceed 25 per cent.; *Upinton vs. Oviatt*, 54 Ohio St., 232.

(c) According to a certain *proportion* as, 2-3 cost per front foot; *Mayor of Balto. and Webb vs. Johns Hopkins Hospital, et. al.* 56 Md. 1; 2-6 on paved side, 1-6 on unpaved side ; *State, Sigler vs. Fuller, Collector*, 34 N. J. 227.

(d) According to a certain amount in *dollars and cents*, as 50 cents per acre (*area*); *Egyptian Levee Co. vs. Harding*, 27 Mo. 496; not to exceed 75 cents per front foot; *City of Philadelphia vs. Tyron*, 11 Casey, Pa. 401; *Lipps vs. City of Philadelphia*, 38 Pa. 503; 1 story, 12 cents per front foot; 2 story, 16 cents per front foot; vacant lot, 8 cents per front foot ; *Allen vs. Drew*, 44 Vt. 174; 60 cents per front foot, and 1 cent per square foot ; *Cleveland vs. Tripp*, 13 R. I. 50–51.

Our law provides for 50 cents per front foot and 1 cent per square foot.

IV.  And the Legislature's decision, short only of a legal robbery, is *final and conclusive.*  2  Dillon § 752; 2 Desty 1246; Elliott; Roads 393; Tiedeman, Police Lim. 481; 2 Beach §176.

(a)  And if the Legislature says it is benefited, *it is.*   2 Beach §1175.

V.  And when the Legislature has itself fixed the amount and apportioned the same, and the ascertainment of what is due by and from the abutting property owner, is merely a simple question of *multiplication or mathematics,* (as it is in the front foot rule,) then *notice is not necessary,* as it would be an idle ceremony and of no possible use to him.   2 Dillon § 802;  2 Beach § 1187;  Elliott, Roads 397, 415;  10 Am. & Eng.  Ency. of Law 287; *Amery vs. City of Keokuk,* 72 Iowa 701 ; *Fennell vs. Kates et. al.* 19 Ohio St. 405; *Mayor Balto. and Webb vs. Johns Hopkins Hospital, et. al.* 56 Md. 1 ; *Alberger et. al. vs. Mayor Balto. &c.,* 64 Md. 1 ; *Ulman vs. Mayor,* 72 Md., 587 ; (dissenting opinion of Judges Robinson and Bryan); *Gillette vs. City of Denver,* 21 Fed. Rep. 822 ; *Hagar vs. Reclamation District,* 111 U. S. 701 ; *Garvin vs. Daussman,* 114 Ind. 429 ; *Cleveland vs. Tripp,* 13 R. I. 50.

VI. Had the plaintiff gone into a court of equity, the maxim that " he who seeks equity, must do equity, " would have required of him the payment in full of the cost of the construction of the sewer in front of his property, or at least to the extent of the benefit given his property, as a condition precedent to his having any standing whatever in said Court.   *Montgomery vs. Wasen, et. al.,* 116 Ind. 343; 1 High, Injunctions, §§ 497, 498, (and cases therein cited.)

And the same doctrine prevails so strongly at law that courts will hesitate long, and even go out of their way, before they will

permit a doubt, an irregularity, or even an objection of a more serious nature, to impair an act of the Legislature, and to nullify as law, that, by which, and under which, one's property is unquestionably benefited, and yet, whose owner seeks the overthrow of said law in order that he may evade any and all payment whatsoever. *Collins vs. Holyoke,* 146 Mass. 298; *State, Sigler vs. Fuller, Collector,* 34 N. J. 227; *State vs. Jersey City,* 29 N. J. 441; *Scoville vs. Cleveland,* 1 Ohio St. 126; *In matter Hebrew B. O. A. Society,* 70 N. Y. 476; *Roosevelt Hospital vs. Mayor New York,* 84 N. Y. 108; *City of Cincinnati vs. Anchor W. Lend Co.,* 44 Ohio St. 243; *Caldwell et. al. vs. Curry, Treasurer, et. al.,* 93 Ind. 360; 37 Mo. 238; 34 Mo. 404; 30 Mo. 537; Elliott, Roads, 386.

VII. If there be any doubt as to the constitutionality of the law, that doubt will be resolved in favor of its constitutionality. Cooley's Const. Lim. 218–219; Endlich, Interp. Stat. 738, 248 (n.)

Most respectfully do we submit therefore, for the reasons herein set forth, that the law in question is in all respects constitutional , and that the Board of Directors of the Street and Sewer Department, has acted in accordance with the letter and spirit of the law.

NICHOLSON, CHANCELLOR, delivered the opinion of the Court.

It is not open to doubt, nor is it questioned in this case, that it is within the power of the Legislature to require that the expense of constructing drains, sewers, and the like, should be met, in whole or in part, by local assessments made upon persons or property benefited or deemed to be benefited. " Legislation of this character, both in respect to its justice and constitutional validity, has been extensively discussed by judicial tribunals of nearly every State in the Union. The Courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvement is a branch of the taxing power, or included within it; and the many cases which have been decided

fully establish the general proposition that a statute authorizing the municipal authorities to open or establish streets, or to make local improvements of the character above mentioned, and to assess the expense upon the property which, in the opinion of the designated tribunal or officers, shall be specially benefited by such street or improvement, in proportion to the amount of such benefit, or upon the abutters in proportion to benefits or frontage or superficial contents, is, in the absence of some special constitutional provision, a valid exercise of the power of taxation. Whether the expense of making such improvement shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefited, and, if in the latter mode, whether the assessment should be upon all property found to be benefited, or alone upon the abutters according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency, unless there is some special restraining constitutional provision upon the subject. Whatever limitation there is upon the legislative power of taxation (which includes the power of apportioning taxation) must be found in the nature of the power and in express constitutional provisions;" 2 Dill. Mun. Corp. § 752. The foregoing quotation from Judge Dillon's excellent work presents, with clearness and precision, the general propositions established by the innumerable decisions upon the general subject of assessment for local improvement; and he has cited and commented upon, in his notes to the passage above quoted, a vast number of authorities, including nearly all those that have been cited in this connection in the able and elaborate briefs of the counsel in this cause. A leading case, cited with approval in numberless cases, and quoted at great length in Cooley's Constitutional Limitations, is *People vs. Mayor, etc., of Brooklyn,* 4 N. Y. 420, decided in 1851. In this case Judge Ruggles says: "It must be conceded that the power of taxation and of apportioning taxation, or of assigning to each individual his share of the burden, is vested exclusively in the Legislature, unless this power is limited or restrained by some constitutional provision. The power of tax-

ing and the power of apportioning taxation are identical and inseparable.  Taxes cannot be laid without apportionment, and the power of apportionment is therefor unlimited, unless it be restrained as a part of the power of taxation."   In the same case the learned judge also says :   " The difference between general taxation and special assessments for local objects requires that they should be distinguished by different names, although both derive their authority from the taxing power.   They have always been so distinguished, and it is therefore evident that the word ' tax ' may be used in a contract or a statute in a sense which would not include a street assessment, or any other local or special taxation, within its meaning. Several cases are found in which it has been adjudged to have been so used.   But in no case has it been adjudged that the street assessments are not made by virtue of the legislative taxing power."   In this State there is no express constitutional provision upon the subject of taxation, and no cases have arisen here directly involving the questions raised by the case before us, although the leading principles illustrating the nature and extent of the power of taxation, and the limitations upon its exercises inherent in its nature, have been admirably set forth by Judge Grubb in the opinion delivered by him in the well-known case of *Frieszleben vs. Shallcross*, 9 Houst. 99.

It is altogether too late in the development, both by legislation and elaborate judicial decisions, in States other than our own, of the general principles controlling local assessments for local improvements, for it to be necessary or proper for me to enter into a more elaborate or detailed review of the multitude of authorities sustaining the general propositions already laid down.   It is well settled law (1) that the whole subject of taxing districts belongs to the Legislature ; (2) that the apportionment between the public and the local owners is within the power of the Legislature ; (3) that the Legislature may fix upon the basis of apportionment between individuals.   In fixing upon the basis of apportionment, the two methods between which a choice is commonly made in statutes providing for local assessments are :   (1) An as-

sessment made by assessors or commissioners appointed for the purpose under legislative authority, who are to view the estates, and levy the expenses in proportion to the benefits which, in their opinion, the estates, respectively, will receive from the work proposed; (2) an assessment by some definite standard fixed upon by the Legislature itself, and which is applied to estates by a measurement of length, quantity, or value. Cooley, Taxation 448. The principle is the same in either case, and is concisely expressed by Chief Justice Shaw in one of the early American cases (*Wright vs. City of Boston*, 9 Cush. 241), in language which has been universally quoted, both with and without crediting him with it. He says: "Those who enjoy the benefit shall equally bear the burden." And again: "The benefits actually or presumptively received support the tax." And elsewhere in the same case, which was a sewer case: "The potentiality of receiving a benefit from a sewer is the thing to be charged with the tax." It is obvious that the essential difference between the two methods of apportionment is that when the Legislature adopts the latter method it decides itself the proportion in which the estates, respectively, will be benefited; as when it determines that the frontage or area of abutting lots, or both combined, shall constitute the measure of a sewer assessment. If the Legislature has exercised its power *bona fide*, it must necessarily have considered all the circumstances surrounding the particular case, and have decided that, all things considered, such a measure would prove as nearly just and equal in its actual operation as any practicable method could be. In the case before us the latter method is the one adopted, and the mode by which the Legislature arrived at the basis of apportionment fixed upon by it is fully explained by the general statement of facts already cited, and the act itself, which begins with the following preamble:

" WHEREAS, it is apparent that the City of Wilmington stands in great need of a thorough system of sewers that will be extended over the entire city, providing not only for the present but for the future. WHEREAS, a proper regard for the health of the inhabi-

tants of the city as well as their property and business interests, re-
quires that this work be speedily undertaken. WHEREAS, a plan
of a well defined system has been prepared under the direction of
the Board of Directors of the Street and Sewer Department, and
an approximate estimate of the cost of building the same has been
duly made: Now, therefore," etc.

Regarding the whole contemplated system of sewerage as one
complex whole, the Legislature determined that equity and fairness
demanded that the whole city should be made a single taxing dis-
trict for the purpose of defraying the cost, so that the burden could
be distributed equally throughout the whole territory to be bene-
fited, no property to bear its share of the burden until it should
possess " the potentiality of receiving a benefit " from the system
by having a link of that system placed in front of it. As this great
work—the complete sewerage system upon the plan adopted and
laid before them by the Street and Sewer Department—would not
be finished for many years, it necessarily followed that, if the cost
of the whole was to be so assessed, it must be the estimated cost.
An approximate estimate of the cost of the completed work, based
upon elaborate calculations as described in the above statement of
facts, had been prepared and submitted to the Legislature by the
Street and Sewer Department, together with calculations and maps
of the area and frontage of the lots within the city, and the area of
the streets, and the cost of furnishing the streets with manholes and
inlets. Using these calculations and figures, the Legislature deter-
mined that, as between the public and the estates benefited, two-
fifths of the estimated cost should be borne by the public, *i. e.*, by
general municipal taxation ; and then employing the method of
apportionment, as between individuals, commonly known as the
combined frontage and area system (*Cleveland vs. Tripp*, 13
R. I. 60, and cases there cited), they arrived, by a simple arith-
metical calculation, at the result that the share of three-fifths of
the estimated cost ($1,741,000) to be assessed upon each front foot
of land within the taxation district amounted to 50 cents, and the

share of three-fifths of the same to be assessed upon each square foot of area amounted to 1 cent. Judge Cooley sums up so admirably the grounds upon which the courts would undertake to decide that the Legislature had exceeded its authority in such exercise of the taxing power that I will quote and adopt his language, as follows: " It is conceded that the Legislative judgment that a certain district is or will be so far specially benefited by an improvement as to justify a special assessment is conclusive, and that its determination as to what shall be the basis of the assessment is equally conclusive. To invoke the intervention of a court for relief against the results of its conclusion is to invoke the judicial authority to give its judgment controlling effect over that of the Legislature, in a matter of the apportionment of a tax, which by concession on all sides is purely a matter of legislation. This is confessedly inadmissible in any case where the legislative power has not been exceeded by an apportionment merely colorable. An assessment so grossly and palpably unjust and oppressive as to give demonstration that the legislative judgment had never determined the case on the principles of taxation must always be open to correction. A man's property is not to be taken from him with impunity, and without redress, by simply calling the appropriation an ' assessment,' when it is not such in its elements." Cooley, Tax'n, pp. 459, 460. In the act under consideration it is clearly the opinion of the Court that the legislature had acted within their legitimate sphere, so far as the objections hitherto considered are concerned, which cannot be sustained either on principle or authority. The following are some of the cases in which the courts in other states have sustained similar statutes, for the method of apportionment adopted by the Legislature in this case seems to have become increasingly popular of late years throughout the Union : *Cleveland vs. Tripp*, 13 R. I. 60; *Magee vs. Com.*, 46 Pa. St. 358 ; *Stroud vs. City of Philadelphia*, 61 Pa. St. 255 ; in re Washington Ave., 69 Pa. St. 352, 361 ; *Palmer vs. Stumph*, 29 Ind. 329 ; *Allen vs. Drew*, 44 Vt. 174 ; *Ernst vs. Kunkle*, 5 Ohio St. 520 ; *Upington vs. Oviatt*, 24 Ohio St. 232 ; *Parker vs. Challiss*, 9 Kan. 155 ; *Motz vs. City of Detroit*, 18 Mich. 495 ;

*State vs. Fuller*, 34 N. J. L. 227 ; *City of St. Louis vs. Clemens*, 49 Mo. 552 ; *Emery vs. Gas Co.*, 28 Cal. 345 ; *Chambers vs. Satterlee*, 40 Cal. 497, 514 ; *People vs. Lynch*, 51 Cal. 15 ; *City of St. Louis vs. Oeters*, 36 Mo. 456 ; *Selby vs. Commissioners*, 14 La. Ann. 434.

In the case of *Thomas vs. Gain*, 35 Mich. 156, decided in 1876, which was cited in the argument as the strongest case against such an apportionment, Cooley, C. J., in an elaborate opinion which reviewed the more important cases up to that date, held a certain sewer assessment, apportioned by superficial area alone, invalid, but he distinguishes as follows : " In what has been said it is not intended to decide or to intimate that a sewer tax may not, under some circumstances, be lawful though apportioned by the area of the lots assessed. If, under the law providing therefor, the assessment were confined exclusively to the lots lying contiguous to each other, and on or near the streets in which the sewer was to be constructed, and all properly urban lots, or, as they are sometimes designated, ' inlots,' as distinguished from the outer lands of a town, which receive only slight and indirect benefit from such improvement, and if the law also provided for private drains into the sewer as a matter of right on the part of the proprietors of the lots assessed, the case would be so different from the one now before us that much of what we have said could have no application. We confine our discussion strictly to the record before us, and to the act under which this assessment was laid, not caring to enter upon any discussion of hypothetical cases which may never arise, or which, if they do arise, can better be considered when their special features are presented for consideration." It is only necessary to submit the provisions already set forth of the act under consideration to the tests here applied, to observe that they contain all the essential features of a valid act which these tests suggest.

With regard to the objection that the assessment is based upon an approximate estimate of cost made in advance, and that it might happen that the actual cost would be less than the sum so estimated and collected, it may be remarked that this has been uniformly held

to be no cause for invalidating any assessment, for obvious reasons of public policy, and the necessity for such estimates in every branch of taxation.  *Davidson vs. City of New Orleans*, 96 U. S. 97.

The ground is now clear for the consideration of the remaining and more important objection to the constitutionality of the act, viz: the want of notice ; it being strongly urged and ably argued by counsel that the want of notice is fatal to the validity of the assessment on the fundamental principles of civil liberty, and more especially because of the due process of law clause in the Fourteenth Amendment to the Constitution of the United States.    Whenever the first method of assessment above referred to is adopted by the Legislature, viz: an assessment made by assessors or commissioners, appointed for the purpose under legislative authority, and who are to view the estates, and levy the expense in porportion to the benefits which, in their opinion, the estates, respectively, will receive from the work proposed, it is now unquestioned and unquestionable that an opportunity for a hearing is absolutely necessary to the validity of the assessment.    That is so clear that it is remarkable that it should have been litigated at so late a date as the well-known New York case of *Stuart vs. Palmer*, 74 N. Y. 183.    The question has been repeatedly discussed, however, when the second method has been adopted ; that is, when the Legislature, as in this case, itself fixes upon some definite standard, which is applied to estates by a measurement of length or quantity or by a value independently fixed.    In such cases it is argued that nothing remains to be done to fix upon each individual the amount of his assessment except to make a mathematical calculation, and as a hearing, or an opportunity for a hearing, would therefore be useless and futile. the maxim, " *Cessante ratione, cessat et ipsa lex,*" would apply.    It seems impossible to find any valid distinction between the unquestionable power of the Legislature to impose, without notice, or. opportunity for a hearing, such taxes as poll taxes, license taxes (not dependent upon the extent of the individual's business), and generally, specific taxes on things or persons or occupations, and their power to impose, in the same manner, that kind of tax called " special assess-

ment for local improvement," subject, of course, to the limitations already set forth, which are inherent in the nature of the taxing power, and have been already dwelt upon at great length.    In the case of the taxes first above enumerated the Legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. But the Supreme Court of the United States is the tribunal to which we must look for the authoritative construction of the Fourteenth Amendment to the United States Constitution and its application to this question of notice.    There is a series of decisions of that Court, bearing more or less directly upon this question, which are referred to and reviewed in every well-considered case upon the subject.    It will not be necessary, however, to cite or review them all, for they are all reviewed fully in the two cases from which I shall quote at length.    In *Hagar vs. Reclamation Dist.* No. 108, 111 U. S. 701, decided in October, 1883, Mr. Justice Field, in defining " due process of law " says :    " What constitutes the process may be difficult to define with precision so as to cover all cases, it is no doubt wiser as stated by Mr. Justice Miller in *Davidson vs. New Orleans,* to arrive at its meaning by 'gradual process of judicial inclusion and exclusion as the cases presented for decision shall require, with the reasoning on which such decisions may be founded.'    96 U. S. 97, 104.    It is sufficient to observe here that by " due process " is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected.    It must be pursued in the ordinary mode prescribed by law ; it must be adapted to the end to be attained ; and, wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought.    The clause in question means, therefore, that there can be no proceeding against life, liberty or property which may result in the deprivation of either, without the observance of those general rules established in our system of jurisprudence for the security of private rights."    *Hurtado vs. People,* 110 U. S. 516–536. He further says in the same case :    " Of the different kinds of taxes which the State may impose, there is a vast number of

which, from their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes (not dependent upon the extent of his business), and generally specific taxes on things or persons or occupations. In such cases, the Legislature, in authorizing the tax, fixes the amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of the evidence or other element of a judicial nature, and nothing could be changed by hearing the taxpayer. No right of his is therefore invaded. Thus if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard or bushel or gallon, there is nothing the owner can do which can affect the amount to be collected from him. So, if a person wishes a license to do business of a particular kind, or at a particular place, such as keeping a hotel or restaurant, or selling liquors or cigars or clothes, he has only to pay the amount required by the law and go into the business. There is no need in such case for notice or hearing." In this case the reason for the requirement of notice is well illustrated and also the limitation of the requirement to cases in which notice could be of some conceivable use,—to cases where, if a hearing were had, there would be something to hear and determine. The familiar illustrations, taken from species of taxation with which we are all familiar, make clear the analogies which have guided legislatures in apportioning assessments for local improvements directly by mathematical calculation, and without opportunity given to property owners for a hearing as to the amount of each individual's assessment

The next Supreme Court case I desire to consider (*Spencer vs. Merchant*, 125 U. S. 345), is directly in point, and requires elaborate consideration, for it will be impossible to correctly interpret a decision which is the final authority upon the point under consideration, unless we thoroughly understand the peculiar circumstances of the case, and what was actually decided, without which the mere

language and *dicta* will be sure to prove misleading, as we think
has already been shown in a case decided not long since in a neigh-
boring state. The facts of the case of *Spencer vs. Merchant* were
these: A New York statute of 1869 (chapter 217), as amended
by the statute of 1870 (chapter 619), provided for laying out a
street in continuation of Atlantic avenue, in the City of Brooklyn,
by three commissioners, who, after notice of twenty days, should
award the damages to the land owners, and assess the amount of
the award and the attendant expenses upon the lands lying within
300 feet on either side of the avenue, which, in their judgment,
should be benefited by opening and extending it, and report such
award and assessment to the court for confirmation, after public
notice, that all persons having objection to it might be heard before
the court, etc. This statute, as amended, then went on to provide
that, upon the confirmation of the report as to the opening of the
street, the commissioners should be authorized to enter upon the
land taken, to cause it to be regulated, prepared, and graded for
public travel, and to assess the expense of such regulating, grading,
and preparing for travel upon the lands and premises which in
their judgment should be benefited by such improvement, in pro-
portion to the benefit accruing to them by reason thereof, the dis-
trict of assessment to extend back as provided theretofore in the
act. But it omitted to provide for any notice to the property own-
ers of this assessment for regulating, grading, and preparing for
travel, or any opportunity for a hearing. The sums so assessed
upon some lots were paid, but the sums assessed upon other lots re-
mained unpaid, the owners contesting the validity of the assess-
ment. On June 18, 1878, the Court of Appeals of New York de-
clared that assessment void because no notice or opportunity for a
hearing had been given. This was the well-known case of *Stuart
vs. Palmer*, 74 N. Y. 183, already referred to. On January 29,
1879, comptroller of the State canceled the unpaid assessment,
and charged the county with the amount, together with the
interest. Thereupon a statute of 1881 (chapter 689) directed
that a sum equal to so much of the original assessment so

unpaid and so cancelled as remained unpaid should be levied
on the lots, the assessment made upon which under the or-
iginal act had not been paid, together with interest and a pro-
portionate part of the expenses. The lots so assessed (being those
only whose owners had contested the original assessment which had
been held void) were isolated parcels, not contiguous, and many of
them not fronting on the avenue. Most of the territory benefited
as fixed in the statute of 1869, and a great portion of the original
assessment, were not included in the statute of 1881, nor directed
to be taken into consideration in making the new assessment. But
this assessment included a proportionate part of the expenses of the
former assessment, which had been declared void by the Court of
Appeals. As between the individual owners of the group of lots
upon which this assessment was laid, the amount assessed upon the
group was to be apportioned by a board after notice and an oppor-
tunity for a hearing. This act was held constitutional by the
New York Court of Appeals (*Spencer vs. Merchant*, 100 N. Y.
587, and a writ of error was sued out, the error assigned being
that the statute and the proceedings thereunder were in viola-
tion of the Constitution of the United States, and were void, for
the reason that they deprived the plaintiff and the other persons
assessed thereunder of their property without due process of law.
The particular point raised by the case, as stated by Judge Finch,
of the New York Court of Appeals (and his language was adopted
by Justice Gray, who delivered the opinion of the majority of the
United States Supreme Court), was as follows : " The precise wrong
of which complaint was made appears to be that the land owners
now assessed never had an opportunity to be heard as to the
original apportionment, and find themselves now practically
bound by it as between their lots and those of the owners who
paid." 125 U. S. 354. The nature and extent of the taxing
power is discussed at some length, and the series of United States
Supreme Court decisions, upon the subject to which we have al-
ready referred, is cited, and then Justice Gray says : " In determin-
ing what lands are benefited by the improvement, the Legislature

may avail itself of such information as it deems sufficient, either through investigations by its committees, or by adopting as its own the estimates or conclusions of others, whether those estimates or conclusions previously had or had not any legal sanction. In section 4 of the statute of 1869, the assessment under which was held void in *Stuart vs. Palmer*, 74 N. Y. 183, for want of any provision whatever for notice or hearing, the authority to determine what lands, lying within three hundred feet on either side of the street, were actually benefited, was delegated to commissioners. But in the statute of 1881 the Legislature itself determined what lands were benefited and should be assessed. By this statute the Legislature, in substance and effect, assumed that all the lands within the district defined in the statute of 1869 were benefited in a sum equal to the amount of the original assessment, the expense of levying it, and interest thereon ; and determined that the lots upon which no part of that assessment had been paid, and which had therefore as yet borne no share of the burden, were benefited to the extent of a certain portion of this sum. That these lots as a whole had been benefited to this extent was conclusively settled by the Legislature. The statute of 1881 afforded to the owners notice and hearing upon the question of the equitable apportionment among them of the sum directed to be levied upon all of them, and thus enabled them to contest the constitutionality of the statute, and that was all the notice and hearing to which they were entitled." In thus holding that the Legislature, without notice, could conclusively settle that the lots upon which no part of the void assessment had been paid, and which, as we have seen, were " isolated parcels not contiguous, and many of them not fronting on the avenue," should be assessed a certain portion of a certain sum imposed upon all the lots within the district created by the act under which the void assessment was made, it would seem that the Supreme Court necessarily implied that the Legislature could also have conclusively settled, if it had seen fit so to do, the portion of that portion which each of the selected lots should be assessed ; provided that, under the general laws of New York, it would have been possible for the

lot owners to contest the constitutionality of the act. It is impossible to conceive of any objection to the power of the Legislature to fix without notice the amount of the assessment upon the individual lots of such a selected group of lots which would not apply with equal force to fixing it upon such a group. If it could distribute the amount between different groups of lots, why could it not distribute the amount apportioned to a group, between the individuals of a group? It is true that in the concluding paragraph of the clause above cited Justice Gray refers to the notice and hearing granted to the individual lot owners, but it is to be remembered that the mode of apportionment between them was according to the judgment of commissioners as to the amount of benefit, which necessarily depended upon and required a hearing, and the bearing of such a hearing upon the point decided by the court would seem to be indicated by the concluding sentence of the above-quoted clause, in which Justice Gray says: "It thus enabled them to contest the constitutionality of the statute, and that was all the notice and hearing to which they were entitled." But under the laws of this state any property owner whose rights were affected by the statute now under consideration could at the proper time test the constitutionality of the act, and, further, could introduce proceedings for the correction of injustice, fraud, or error in making the mathematical calculations required. Thus are also met the requirements laid down by the Supreme Court in the case we have already cited of *Davidson vs. City of New Orleans*, 96 U. S. 97.

The Rhode Island courts have sustained statutes almost identical with this one, *Cleveland vs. Tripp*, 13 R. I. 60, already cited, being the leading case. And in *Gillette vs. City of Denver*, 21 Fed. Rep. 823, a sewer assessment case, where the assessment was imposed upon the property within the district according to the area, and the objection was raised that no notice was provided, and there was therefore no due process of law, Circuit Justice Brewer said (page 824): "Now, in this case, the tax is laid by the area; no question of value, no matter of judgment,—a mere mathematical calculation; and of what earthly profit could it be to a taxpayer to have

notice of that calculation ?    He can make it himself.    He cannot correct by the testimony the judgment of anybody ; it is as exact and settled as anything can be." In Maryland the majority of the Court in the case of *Ulman vs. Mayor, etc.,* 72 Md. 587, have reversed a series of prior decisions, viz : *Mayor, etc, vs. Scharf,* 56 Md. 50; *Mayor, etc. vs. Johns Hopkins Hospital,* 56 Md. 1; *Moale vs. Mayor, etc.* 61 Md. 224 ; and *Alberger vs. Mayor, etc.,* 64 Md. 1, and base their opinion apparently upon certain expressions about notice employed by Justice Gray in the above-cited case of *Spencer vs. Merchant.* But the Court take occasion to say (page 595) : " Some cases have held that where the appointment has been made by the Legislature it is final ; but, without pausing to discuss this proposition, it is only necessary to say that those cases are not applicable here, for the very obvious reason that the act of 1874 (the act before them) has made no such apportionment."

Some objections have been made by counsel for the plaintiff that the proceedings of the defendant were not in certain respects in accordance with the provisions of the act, but after examination we are unable to find any irregularity, and consider, in view of the authorities and reasoning we have already set forth at length, that 19 Del. Laws, c. 209, does not conflict either with the provisions of the Constitution of the State of Delaware, or with the Fourteenth Amendment of the Constitution of the United States, and is in all respects constitutional. We are of the opinion that the assessment and lien aforesaid ought not to be reversed, canceled, or annulled, and we shall therefore so certify to the Superior Court for New Castle county.

All the judges concurred in the above opinion, with the exception of CULLEN, J., who dissented, but read no dissenting opinion.